NIGHT BOX
FILED

NOV 01 2000

CLERK, USDC / SDFL / WPB

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6211-CR-HURLEY

UNITED STATES OF AMERICA   )
                           )
v.                         )
                           )
MOHAMMED SAMHAN            )
                           )
_____)

### APPEAL OF MAGISTRATE JUDGE'S
### DENIAL OF REQUEST FOR PRETRIAL DETENTION

The United States of America, by and through undersigned counsel, hereby files this appeal of Magistrate Judge Seltzer's October 27, 2000, Order Denying the Government's Request for Pretrial Detention on Defendant MOHAMMED SAMHAN.[1]  On July 29, 2000, Defendant MOHAMMED SAMHAN was arrested at his residence in Miami, Florida. On August 1, 2000, a grand jury in the Southern District of Florida returned an indictment charging SAMHAN (and 13 co-defendants) with conspiracy to possess pseudoephedrine knowing or having reasonable cause to believe it would be used to manufacture methamphetamine, and two substantive counts of possession of pseudoephedrine, in violation of 21 U.S.C. §846 and 841(d)(2).  On August 3, 2000, a detention hearing was conducted, and SAMHAN was ordered detained.

---

[1] A copy of the transcript of the Pretrial Detention Hearing will be filed with the Court as soon as it is completed.



On October 27, 2000, due to changed circumstances and new defense counsel, a second Pretrial Detention hearing was held. At that time, Magistrate Judge Seltzer denied the Government's Request for Pretrial Detention and ordered a $100,000 corporate surety bond with <u>Nebbia</u>, a $400,000 personal surety bond cosigned by friends and family members, electronic monitoring, and house arrest. Magistrate Judge Seltzer stayed his Order Denying Pretrial Detention, pending appeal to the District Court.

At the detention hearing, the United States proffered that pseudoephedrine is an over the counter cold medicine which is a precursor used in the manufacture of methamphetamine. At the time of SAMHAN's arrest, he was in possession of 144 pounds of loose pseudoephedrine pills at his residence, which could be converted into methamphetamine valued at approximately $600,000. The United States also proffered that SAMHAN and co-defendant Rabah El Haddad had shipped pseudoephedrine from South Florida to California and that El Haddad traveled to California to make certain the pseudoephedrine reached its intended destination - clandestine methamphetamine labs in California.

The United States also proffered that when El Haddad was arrested in California on July 29, 2000, he was in possession of 220 pounds of loose pseudoephedrine. That amount can be converted into methamphetamine valued at $924,000. On two other occasions (June 1, 2000 and June 15, 2000) SAMHAN and El Haddad shipped large

quantities of pseudoephedrine to the West Coast. SAMHAN and El Haddad, who had obtained the pseudoephedrine from the lead defendant Thomas Narog, had gone to a private postal facility where they repackaged boxes of pseudoephedrine for shipment to the West Coast. An employee at the private mail facility indicated that he was paid to remove pseudoephedrine pills from the bottles. SAMHAN and El Haddad never indicated that they were shipping medicine, drugs, or pseudoephedrine; they indicated that they were shipping books, shoes, or cosmetics. El Haddad traveled to California and Oregon to make certain the two shipments of pseudoephedrine reached the intended destination.

When SAMHAN and El Haddad left the postal facility, agents attempted to follow them. They were unable to do so because SAMHAN and El Haddad were doing counter-surveillance, driving around the block 3 or 4 times before driving to their residence. The United States proffered that the total value of the three shipments of pseudoephedrine that SAMHAN and El Haddad shipped to the West Coast was at least $3.1 million. The total value of all of the shipments of pseudoephedrine to the West Coast by all of the defendants in this conspiracy was at least $15 million.

## MEMORANDUM

Defendant should be held in pretrial detention. At the second Pretrial Detention Hearing, the Government argued that based on these facts and the applicable law, SAMHAN should be detained.

Section 3142(e) of the Bail Reform Act provides that a judicial officer shall order detention if he finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. See 18 U.S.C. § 3142(e). This section accords the judicial officer substantial latitude in determining whether pretrial detention is appropriate. United States v. King, 849 F.2d 485, 487 (11th Cir. 1988).

In passing the Bail Reform Act, Congress determined that drug offenders pose special risks of flight. King, 849 F.2d at 489 (statutory presumption that drug offenders pose special risks of flight). Indeed, the legislative history of the Bail Reform Act recognizes the

> increasing incident of defendants, particularly those engaged in highly lucrative criminal activities such as drug trafficking, who are able to make extraordinarily high money bonds, posting bail and then fleeing the country. Among such defendants forfeiture of bond is simply a cost of doing business. 1984 U.S. Code Cong. & Ad. News 3206-07.

In addition, the Act creates several rebuttable presumptions which the judicial officer must use in determining whether pretrial detention is warranted under the standard set forth in §3142(e):

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed

in the Controlled Substances Act (21 U.S.C. § 801 <u>et seq</u>.). . .

18 U.S.C. § 3142(e). In order to trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment. <u>King</u>, 849 F.2d at 487-488; <u>United States v. Hurtado</u>, 779 F.2d 1467, 1479 (11th Cir. 1985).

As to defendants charged with drug trafficking crimes, the statutory presumption of flight risk and danger to the community, even if rebutted by the defendant, retain evidentiary weight and must be considered along with all other relevant factors. <u>King</u>, 849 F.2d at 488 (even if "rebutted" presumption remains as an evidentiary finding militating against release); <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (presumption does not disappear but instead retains evidentiary weight -- the amount depending on how closely the defendant's case resembles the congressional paradigm); <u>United States v. Jessup</u>, 757 F.2d 378, 380-86 (1st Cir. 1985) (presumption reflects Congress' finding that drug traffickers often have the resources and foreign contacts to escape to other countries).

SAMHAN has been charged by way of indictment with conspiracy to possess pseudoephedrine knowing and having reasonable cause to believe that it would used to manufacture methamphetamine, and possession of pseudoephedrine. The conspiracy involves thousands of pounds of pseudoephedrine worth millions of dollars when

converted into methamphetamine. If SAMHAN is convicted, he is facing a maximum sentence of twenty years imprisonment. His guideline imprisonment range would be 97-121 months based on an offense level of 30. This range may be increased or decreased depending on the imposition of guideline adjustments. Thus, the government is entitled to the rebuttable presumption under section 3142(e) and the burden was on SAMHAN to present evidence that he was not a risk of flight and danger to the community.

The term "dangerousness" as used in the Act has a much broader construction that might be commonly understood. King, 849 F.2d at 487 n.2. The concept of defendant dangerousness includes not only the danger of harm involving physical violence but also the risk that a defendant would continue to engage in drug trafficking. Id., quoting Report of the Senate Committee on the Judiciary, S.Rep. No. 98-225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195-96. Magistrate Judge Seltzer seemed to focus on the fact that SAMHAN was arrested without incident and that no weapons were discovered upon his arrest. However, the fact that SAMHAN (and El Haddad) shipped significant amounts of pseudoephedrine, valued at millions of dollars, on multiple occasions to the West Coast evidences the fact that they continued to engage in drug trafficking until they were apprehended.

SAMHAN offered no evidence at the pretrial detention hearing that would rebut the presumption of dangerousness. The massive

amount of pseudoephedrine involved in this case (thousands of pounds) points to the dangerous nature of SAMHAN. It was also established at the hearing that the defendant has ties to the Mideast (Jordan) where he was born and has citizenship, and to Saudi Arabia, where a brother still resides. Defendant is not a United States citizen, although he is in the process of applying for citizenship and his two daughters are United States citizens. According to the Pretrial Services Report, Defendant's mother resides in Jordan. However, at the Pretrial Detention hearing, Defendant indicated his mother was at the hearing and was now in the United States.

The statutory presumption has buttressed the pre-trial detention of defendants who are involved in major narcotics conspiracies who presumably have the resources and incentive to flee. Palmer Contreras, 835 F.2d at 18 (involvement in 195 kilo deal supported inference that defendants were connected to persons or an organization with great financial resources that could finance the defendants relocation).

Persons who engage in narcotics activity, according to Congress as articulated in section 3142(e), pose special risks of flight. Jessup, 757 F.2d at 385. These special risks are not outweighed by the mere presence of family or community ties. See United States v. Cardenas, 784 F.2d 937, 939 (9th Cir. 1986) (risk of flight warranting pre-trial detention despite family ties and

7

history of prompt court appearance); <u>United States v. Martir</u>, 782 F.2d 1141, 1146-47 (2nd Cir. 2986) (likelihood of substantial imprisonment upon conviction creates incentive to flee); <u>United States v. Diaz</u>, 777 F.2d 1236, 1238 (7th Cir. 1985) (risk of flight justifying pre-trial detention despite family ties and lack of prior criminal record as defendant faced a long prison sentence).

At the hearing, Defendant argued that he has ties to the community. The United States recognizes that SAMHAN had an impressive display of support of family and friends at the Pretrial Detention Hearing. This fact, however, as noted by the legislative history of the pre-trial detention statute, is the <u>least significant</u> factor to be considered when making a determination concerning pre-trial detention.

> The Committee...notes, with respect to the factor of community ties, that it is <u>aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance and has no correlation with the question of the safety of the community.</u> While the Committee considered deleting this factor altogether, it has decided to retain it at this time. However, the Committee wishes to make it clear that it does not intend that a court conclude there is no risk of flight on the basis of community ties alone; instead, a court is expected to weigh all the factors in the case before making its decision as to the risk of flight and danger to the community.

S. Rep. No. 98-2255, at p. 24-25 (emphasis supplied).

When the presumption is considered in conjunction with all of the evidence presented to the Magistrate Judge, it is clear that

pretrial detention for SAMHAN is warranted. The government proved by clear and convincing evidence that SAMHAN falls within that identifiable group of dangerous drug offenders which the Bail Reform Act of 1984 targeted. Since SAMHAN would pose a threat to the community and a risk of flight if he were released, the magistrate judge should have ordered pre-trial detention. See United States v. Salerno, 107 S.Ct. 2095 (1987). A proper application of 18 U.S.C. §3142 mandates the pretrial detention of the defendant. Accordingly, Magistrate Judge Seltzer improperly denied the Government's Request for Pretrial Detention. The United States respectfully requests that this Court reverse Magistrate Judge Seltzer' bond order and impose pretrial detention on Defendant MOHAMMED SAMHAN.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
LAURENCE M. BARDFELD
Assistant U.S. Attorney
500 East Broward Blvd., #700
Ft. Lauderdale, Florida  33394
(954) 356-7255, Fax: 356-7228
Fla. Bar No. 712450

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed/hand-delivered this ___1st___ day of November, 2000, to: Richard Hamar, Esquire, 2437 Briarcrest Road, Beverly Hills, CA 90210, Leonard Fenn, Esquire, 2121 Ponce de Leon Boulevard, Suite 430, Coral Gables, FL 33134.

LAURENCE M. BARDFELD
ASSISTANT U.S. ATTORNEY