NIGHT BOX
FILED

MAR 19 2001

CLERK, USDC / SDFL / WPB

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 00-6211-CR-HURLEY/VITUNAC |
| Plaintiff, | ) | |
| v. | ) | |
| MOHAMMED SAMHAN | ) | NOTICE OF INTENT TO USE EXPERT WITNESS; MEMORANDUM OF LAW (Fed.R.Evid. 702,703) |
| Defendant. | ) | |

Kindly take notice that the Defendant, Mohammed Samhan, will be calling Dr. Wallid Phares as an expert witness pursuant to Fed.R.Evid. 702,703 and <u>Daubert v. Merrell Dow Pharmaceuticals,</u> <u>supra</u> based on the following:

STATEMENT OF FACTS AND DEFENSE

From September 1999 until July 29, 2000 a vast quantity of Sudafed Cold medicine was distributed from a pharmaceutical warehouse in Fort Lauderdale to persons on the West Coast of the United States.

Although the defense has not been noticed, the Government will call an expert witness in its case in chief to establish that



Sudafed has the ingredient pseudoephedrine, which is one of eight ingredients used to make methamphetamine[1].

The Defendant, Mohammed Samhan, is involved in the Superceding Indictment and proof because he was present with other codefendants. He also helped pack and ship the Sudafed. He also had Sudafed cold medicine in box and loose form at his home. The Government will also produce evidence that Samhan drove in a counter surveillance manner.

A lead agent for the Government testified at an earlier hearing that Mohammed Samhan had no connection to the warehouse where the pills were stored. He did not travel to any out of state location where the legal cold pills were to be converted. He did not contact anyone out of state where the legal pills were to be converted. He had no relationship to anyone out of state connected to this matter.

There are no recordings of Samhan discussing this matter. There is no evidence that Samhan was paid any money for his assistance[2]. There are no informants who indicate Samhan has done anything wrong. Samhan made no admissions. There are no "pay and owes" incriminating Samhan.

---

[1] The Defense has not been provided with any discovery that the Sudafed cold medicine distributed in the instant case was even sent to a laboratory to produce methamphetamine.

[2] The Government found some money orders in the possession of Samhan. Samhan will establish the source of these funds and the purpose for having them.

2

No witness will testify that the Defendant was present when any alleged participants discussed whether the cold pills were going to be converted to methamphetamine[3].

The Defendant, Samhan, has no prior felony arrests, nor is there any evidence that he has ever been involved in illegal drugs.

The stakes are particularly high for Samhan and his family. His minor children are U.S. citizens, but Samhan is a deportable alien who obtained residency because of his refusal to join a terrorist group in the Middle East. Evidence at the bond hearing established that Samhan has done abundant community service in the South Florida community.

Samhan will testify. His defense is that he assisted a friend pack, store and ship, without knowledge that the Sudafed would be converted to an illegal drug. The friend, codefendant Haddad, is from a village ten minutes[4] from Samhan.

### THE EXPERT WITNESS

Dr. Wallid Phares resides in Miami, Florida. He is a full professor at Florida Atlantic University.

---

[3] The Government indicated to counsel that codefendant Jabber was going to plead and cooperate. Even on the morning of arraignment on the Superceding Indictment Jabber had not indicated Samhan was present at any meeting where the illegal plan was discussed. Unfortunately for Samhan, that is now apparently academic since Jabber's counsel advised Magistrate Judge Vitunac that Jabber has fled.

[4] Before emigrating, the two lived approximately one hour North East of Jerusalem.

A. EDUCATION

Dr. Phares was educated at St. Josephs University in Beirut, Lebanon. His dual majors were political science and law. He also studied arab culture.

He obtained his Masters degree at the University of Lyon, France.

Dr. Phares obtained his PhD at the University of Miami in the fields of International Relationships and Middle East Studies.

B. TEACHING EXPERIENCE

Dr. Phares is a full professor at Florida Atlantic University. He was hired in 1993. He teaches or has taught eight undergraduate courses. The subject matter includes: Middle East Politics; Comparative Politics; Ethnic Conflicts, Religion and World Politics; Jews, Christians and Islam; Politics and the History of the Middle East; and Clash of Civilizations.

Dr. Phares also teaches graduate and doctoral seminars.

He previously taught a curriculum of Middle East studies at Florida International University.

Dr. Phares has lectured in this subject matter at Colombia, George Washington University, Ohio University, The University of California Santa Barbara, The University of Colorado and others.

C. PUBLICATIONS

Dr. Phares has written eight books related to Middle East culture and politics.

He has written three articles on the subject matter and has prepared approximately 20 lectures related to this subject matter.

4

D. FIELD TRIPS

Dr. Phares has visited the cities where the Defendant, Samhan, and the Codefendant, Haddad used to live. He has interviewed young persons, students and professors in the area regarding questions related to his testimony.

E. PRIOR TESTIMONY

Dr. Phares has testified in proceedings before the United States Senate. He has provided Congressional briefings. He has also provided briefings to the State Department.

Dr. Phares has frequently testified as an expert in the Courts of the United States Immigration and Naturalization Service related to Middle East issues. He has testified in Chicago, Miami, New York, Philadelphia and Pittsburgh.

F. THE ANTICIPATED TESTIMONY

The Defense respectfully requests to elicit:

1) Arab males have a longstanding historical, cultural and religious tradition of assisting other Arabs. There is an extremely loss of face if this tradition is not followed. That trait is most intensely practiced the closer the persons lived near each other. That trait comes sharply into focus when both the person receiving and providing assistance are living in a foreign country. In the instant case, Samhan and Haddad are from neighboring villages.

Dr. Phares will testify that this trait predates the Koran. His testimony will be based on his personal academic research and study.

5

His testimony is information not known by the vast majority of lay persons.

His testimony is crucial to understanding why the Defendant, Samhan, would innocently spend numerous hours away from his family and business to assist another person from the Middle East.

2) that persons from this area of the Middle East have a longstanding tradition of trading. This is true even for professionals[5].

His testimony will be based on his personal academic research and study.

His testimony is information not known by the vast majority of lay persons.

His testimony is important to understanding by inferences and deductive reasoning why the Defendant, Samhan, would be further interested in assisting Haddad in a wholesale cold medicine venture, and why he might assume that a fellow trader would be legitimately dealing in this product[6].

3) in the event that voir dire exposes a significant bias against Arabs, that persons from the Middle East possess positive character traits for loyalty, honesty and in some cases lack of terrorism[7].

---

[5] Samhan is not a professional. He owns convenience stores and fits squarely into the area of the this expert testimony.

[6] Haddad also has a convenience store.

[7] This is particularly true of a person like the Defendant, Samhan, who risked his life and fled his homeland because he refused to join Hamas, a terrorist group, when recruited.

6

The testimony will be based on personal academic research, writings and lectures.

This testimony could be crucial to dispelling certain myths held by some prospective jurors in the District[8].

MEMORANDUM OF LAW

A. EXPERT WITNESSES

The United States Supreme Court requires that the hypothesis for expert opinion be based on reliable underlying principles and methodology. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993). See also: <u>Edwards v. Safety-Kleen Corp</u>., 61 F.Supp. 1354 (S.D.Fla. 1999).

The testimony in the instant case will be elicited from an expert that has been taught, and done independently research and study. Dr. Phares has actually visited the villages of Samhan and Haddad and interviewed numerous persons in this region.

It is clear that the qualifications and experience of Dr. Phares insures that this testimony will not be simple conclusory, or the parroting back of what he has read in books.

B.  THE RIGHT TO PRESENT A DEFENSE

The Sixth Amendment of the United States guarantees the right to prepare and present a defense. <u>Washington v. Texas</u>, 388, U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). <u>Chambers v. Mississippi</u>, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

---

[8] With this Courts permission, a questionnaire could be prepared by the Defendant, approved by the Government to better ferret out if some jurors are biased against Arabs.

7

In the instant case, the Defense of assisting another person from the same region is the crux of the defense. It may seem highly suspicious and the Government will most likely argue that the Defendant would not have spend so much time with codefendants if he was innocent.

The average jury might accept such an argument based on his common sense and personal experience. However, various cultures have traditions and traits not necessarily understood by a lay person who is not from that culture.

The Government will call several experts including an agent who investigated and who is assisting to prosecute the instant case to testify about counter surveillance driving being an indicia of guilt.

This area of testimony is far more subjective and less inclined to be academically verifiable than the testimony requested in the instant Notice.

The expert witness for the Government, who will testify on counter surveillance driving, does not have near the academic basis to so state his opinion as Dr. Phares.

/
/
/
/
/
/
/

## 88.9 Certificate

I, Richard A. Hamar, hereby certify that I personally spoke with Assistant United States Attorney, Larry Bardfeld, on March 14, 2001 and advised him of the use of this expert. He will study the qualifications and subject matter of this testimony and respond accordingly.

*[signature]*

Richard A. Hamar

## CONCLUSION

It is respectfully requested that Dr. Wallid Phares be permitted to testify in the areas outlined above.

Respectfully Submitted,

*[signature]*

Richard A. Hamar, Fl. Bar 127562
2437 Briarcrest Road
Beverly Hills, CA 90210
(310) 550-0460
(310) 550-0461

## PROOF OF SERVICE

I, Richard A. Hamar, declare: I am a citizen of the United States; I am over the age of eighteen years and not a party to this action; my business address is 2437 Briarcrest Road, Beverly Hills, CA 90210.

On March 19, 2001, I mailed this <u>NOTICE OF EXPERT WITNESS (PHARES)</u> to Larry Bardfeld, Assistant United States Attorney, located at 500 E. Broward Blvd. Fort Lauderdale, Florida 33394 and all those on the service list. I also sent this Notice by fax to Mr. Bardfeld. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This was executed at Beverly Hills, CA.

_____
RICHARD A. HAMAR

SERVICE LIST

AUSA Larry Bardfeld
500 East Broward Blvd., 7th Floor
Fort Lauderdale, Florida 33394-3092

Fred Haddad, Esquire
Attorney for Defendant NAROG
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394

Glenn Seiden, Esquire
Attorney for Defendant JABER
33 North Dearborn Street, Suite 1015
Chicago, IL 60602-3105

Mark E. NeJame, Esquire
Attorney for Defendant ALMASRI
1 South Orange Avenue, Suite 304
Orlando, FL 32801

Theodore W. Weeks, Esquire
Attorney for Defendant ABDELMUTI
1 Lake Morton Drive
P.O. Box 3
Lakeland, FL 33802-003

Timothy Basiello, Esq.
Attorney for Defendant FNEICHE
33 North Dearborn Street
Chicago, IL 60602

John R. Howes, Esq.
633 S.E. 3rd Avenue, Suite 4F
Ft. Lauderdale, Flroida 33301

Richard A. Hamar, Esq.
2437 Briarcrest Road
Beverly Hills, CA 90210

Mohammed Samhan
12882 S.W. 87th Avenue
Miami, Florida 33176