NIGHT BOX
FILED

MAY 29 2001

CLERK, USDC / SDFL / WPB

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. 00-6211-CR-HURLEY/VITUNAC |
| Plaintiff, ) | |
| v. ) | |
| MOHAMMED SAMHAN ) | |
| Defendant. ) | |

## TRIAL BRIEF

COMES NOW, the Defendant, Mohammed Samhan, and respectfully files this trial brief to assist the Court with the law, facts, witnesses, exhibits and the approximate time the Defendant will require to try this matter.

Submitted by,

Richard A. Hamar
Florida Bar # 127562
2437 Briarcrest Road
Beverly Hills, CA 90210
(310) 550-0460
(310) 550-0461
Attorney for Samhan

TABLE OF CONTENTS

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . 1

SPEEDY TRIAL ISSUES . . . . . . . . . . . . . . . . . . . . . .2

CHARGES AND SENTENCING EXPOSURE . . . . . . . . . . . . . . . .4

BOND STATUS . . . . . . . . . . . . . . . . . . . . . . . . . .4

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . 5

ISSUES RELATED TO VOIR DIRE . . . . . . . . . . . . . . . . . .6

WITNESS LIST . . . . . . . . . . . . . . . . . . . . . . . . . 6

EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . ..8

EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . . . . . 8

JURY INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . .15

TRIAL ESTIMATE . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATEMENT OF THE CASE

The first wave of Defendants, including Mohammed Samhan, were arrested on July 29, 2000.

The Indictment was filed on August 1, 2000. The gravamen of the charges was the possession of the precursor, pseudoephedrine, a substance used to manufacture methamphetamine.

The last Defendant to be arraigned, Raed Naser Aldin, was arraigned on October 10, 2000.

On November 7, 2000, the trial date in this matter was continued to March 5, 2001. The Defendant, Samhan objected to the continuance.

On February 8, 2001 the trial of this matter was continued. The Defendant, Samhan objected to this continuance.

On February 27, 2001, the Government filed a superceding indictment. The gravamen of this Superceding Indictment was to now charge a conspiracy to possess methamphetamine, as opposed to merely a conspiracy to possess the precursor.

The Defendants were arraigned on the Superceding Indictment on March 14, 15, 16 and 21, 2001. At his arraignment on March 14, 2001, Defendant Samhan objected on the record to the failure of the Government to file a speedy trial report. Codefendant, Jabber, failed to appear on March 14, 2001 and remains a fugitive.

The trial of the Defendants who have not plead guilty is trailing a matter known as United States v. Hogan, 99-8125. This matter is projected to conclude during the week of June 11, 2001.

## SPEEDY TRIAL ISSUES

At the status conference of March 14, 2001, the undersigned noted on the record that the Government had not filed a speedy trial report. Magistrate Vitunac also indicated that the court staff had not filed a speedy trial report. The undersigned requested speedy trial reports at this time.

The following is a rough interpretation from Defendant Samhan's point of view.

There will be a total elapsed time of approximately 310 days from the filing of the indictment until the projected date of the commencement of the jury trial. Samhan has not consented to any continuances or agreed to any waivers of speedy trial rights.

18 U.S.C. 3161 (c)(1) requires a criminal matter to be tried within 70 days of indictment.

However, this period will begin to run anew from the date of the latest arraignment of any codefendant. Since Codefendant Raed Naser Aldin was arraigned on October 10, 2000, there has been a total elapsed time of approximately 240 days from last arraignment to commencement of trial.

The filing of a Superceding Indictment does not restart the speedy trial clock. 884 F.Supp. 354

Thus, the speedy trial period has run unless there have been more than 170 days chargeable to motions filed in this case from October 10, 2000 until commencement of trial. 18 U.S.C. (1)(f).

2

It appears that there were numerous substantive motions by various Defendants from October 10, 2000 until March 14, 2001. However, there is an argument that there is some period of time not excludable by the speedy trial rule.

From March 14, 2001 until the filing of this Trial Brief, there have been motions carried for a lengthy time before this period, minor occasional motions related to counsel, motions to adopt other motions and the Motion to quash warrant filed by Raed Naser Aldin Motion on March 21, 2001 and the Motion to Suppress filed by Raed Naser Aldin on May 4, 2001.

However, it could be argued that only sixty days of these motions is a reasonable period of time[1]. 18 U.S.C. 3161 (1) (f) (j).

Subtracting 60 days from March 14, 2001 until June 11, 2001 leaves approximately 30 days. If this thirty day non-excludable time is added to the period from October 10, 2000 until March 14, 2001, it is still unlikely that the speedy trial period has run. However, any further continuance would likely jeopardize the speedy trial rule and require Samhan to move for dismissal.

It is respectfully requested that the Government file a speedy trial report as required by law.

---

[1] For example, the Government has two trial attorneys assigned to this matter but has received a continuance of the motion to suppress because their lead counsel is in trial. See Docket # 384.

3

## CHARGES AND SENTENCING EXPOSURE

Conspiracy to possess methamphetamine, 21 U.S.C. 841 (a) (1), 846 is found in U.S.S.G. 2D1.1. At least 350 grams to 500 grams is level 30. This charge can be found in Count II of the superceding indictment.

Conspiracy to possess pseudoephedrine with the intent to manufacture methamphetamine, 21 U.S.C. 802, 841 (d) (2) is found in U.S.S.G. 2D1.11. 20 kilograms is level 30.

Count two of the superceding indictment carries a minimum penalty of ten years.

Level thirty for category I is 97-121 months. Due to Samhan's neutral or minor role, his exposure approximates the minimum-mandatory ten year sentence.

As a United States resident, Samhan also faces deportation. This is particularly harsh in his case because his children are United States Citizens and Samhan was granted political asylum because he was threatened by the terrorist group, Hamas.

## BOND STATUS

The Defendant was originally detained. However, this Court granted a de novo hearing because of lack of preparation by his previous counsel.

The Defendant was granted bond on December 7, 2000. He has complied with all bond requirements.

## STATEMENT OF THE FACTS

Codefendant, Tom Narog, controlled a warehouse known as Seaside Pharmaceutical. This company received large quantities of cold pills containing a substance known as pseudoephedrine.

On several occasions, Codefendant Haddad, requested Defendant, Samhan, to assist him with the transportation and packaging of these pills for shipment out of the state of Florida. The pills, in some instances, were taken out of their original packaging and shipped in loose form. The boxes of pills, in some instances, were repackaged in boxes that were hand labeled to reflect that they were books and clothing.

When arrested, Samhan consented to a search of his home. The search revealed a few boxes of pills and some in loose form.

Pseudoephedrine is one chemical of eight that can be used to manufacture methamphetamine. The Government has proof that the pills shipped by Haddad were used to manufacture methamphetamine.

Mohammed Samhan had no connection to the warehouse where the pills were stored. He did not travel to any out of state location where the legal cold pills were to be converted. He did not contact anyone out of state where the legal pills were to be converted. He had no relationship to anyone out of state connected to this matter.

A Government agent will testify that Samhan drove in a counter-surveillance manner. The same agent will testify that Samhan stated while in custody that he did not know codefendant

5

Jabber, even though they had been seen together on surveillance. The Government will also establish that receipts for money orders were found in a vehicle that Samhan owned, and was borrowed by Haddad.

There are no recordings of Samhan discussing this matter. There are no informants who indicate Samhan has done anything wrong. Samhan made no admissions. There are no "pay and owes" incriminating Samhan.

### ISSUES RELATED TO VOIR DIRE

The Defendant has filed proposed voir dire questions. R. 323. He has also suggested the use of a questionnaire due to the possible prejudice against Arabs, especially as Middle East skirmishes heat up.

The undersigned is also prepared to call a Middle East expert to testify about positive Arab character traits and how the Defendant's claim of political asylum due to threats by the Hamas would establish that he is not a terrorist. R. 323.

### WITNESS LIST

(in the most likely order of presentation)

1. Manuel Silva - A lay witness who is a private investigator in Miami, Florida. He will testify about the distances from Rabah El Haddad's home to Pak Mail compared to the distances from the Defendants home and business to Pak Mail. Mr. Silva will also introduce, Exhibit 500, an aerial view of this subject matter.

2. Richard Kalb - A lay witness who is an immigration official, residing and working in Orlando, Florida. Through social contact and community service with Samhan, he will testify about Samhan's character trait and custom of assisting others involving the Catholic Church and Iraqi immigrants claiming political asylum.

3. Ibrahim Ghantous - A lay witness who is an attorney with offices in Miami, Florida. He will testify about Samhan's routine and consistent habits, character traits and customs of assisting others.

4. Mounem Kattoura - a lay witness who is a leader in the Arab American community in South Florida. He will testify about Samhan's routine and consistent habits, character traits and customs of assisting others.

5. Nabil Dalag - a lay witness. He will testify about Samhan's routine and consistent habits, character traits and customs of assisting others.

6. Dr. Walid Phares - An expert witness who will testify about the history, cultural and religious custom and requirement of assisting others, especially those from the same part of Palestine.

The Defendant has filed an extensive Notice of Intent to call Expert Witness over sixty days ago. Dr. Walid Phares is highly qualified witness. R. 322.

7. Defendant, Mohammed Samhan - the Defendant will testify about his activities in relationship to the charges and his relevant background. He has no prior felony arrests.

## EXHIBITS

The Defendant anticipates that he is the fourth and final defendant at trial in the order of the Superceding Indictment. He therefore, respectfully requests that the five hundred series be reserved for his exhibits.

1. Exhibit 500............An aerial overview of the homes of Rabah El Haddad, Defendant Samhan, the convenience store of Samhan and the location of the business, Pak Mail, that packed the boxes of Sudafed.

The Defense has offered this Exhibit for viewing to the Government weeks ago and offers this Exhibit for viewing to all Defense counsel. Contact the undersigned.

## EVIDENTIARY ISSUES

### EVIDENCE OF HABIT, ROUTINE PRACTICE AND PERTINENT CHARACTER TRAIT

The Defendant respectfully requests that this Honorable Court permit the introduction of his habit, routine practice and the pertinent character trait of assisting others pursuant to

Fed.R.Evid. 404 (a) (1) and 406, and the Sixth Amendment of the United States Constitution for the following reasons:

I
PROSECUTION'S THEORY

On several occasions, Mohammed Samhan assisted codefendant, Rabah El Haddad, move, store and ship boxes of Sudafed cold medicine. The Sudafed was shipped to California and Oregon and used as precursor to manufacture methamphetamine.

Although the Government has some evidence of inferences of guilt in its quiver[2], it does not have direct or strong evidence that Mr. Samhan knew that the Sudafed cold medicine was going to be used to manufacture methamphetamine.

Thus, the jury will hear evidence, and the Government will argue that the numerous acts of assistance by Mr. Samhan would not have been done unless he had an interest in assisting Haddad ship an illegal precursor.

II
THE DEFENSE

Samhan will defend this case by establishing that he routinely and consistently assists others because of his personal character

---

[2] The Government will call an agent who will testify that Samhan once drove in a counter-surveillance manner. The same agent will testify that Samhan denied knowing a codefendant who was observed with Mr. Samhan during surveillance. The Government will also establish that some of the boxes he helped ship were labeled as "shoes" or "books" instead of cold medicine. Additionally, the Government will establish that money order receipts were found in a car owned by Samhan and also driven by Haddad.

9

and because it is part of his culture and religion. The defense will establish this defense in three ways.

A. SAMHAN'S TESTIMONY

Mohammed Samhan will testify in great detail as to all of the times he assisted Mr. Haddad move, store and ship the boxes containing Sudafed cold medicine. He will deny that he knew that the Sudafed was going to be used to manufacture an illegal substance.

He will also testify that he has had a trusting relationship with Haddad for over one decade and that Haddad has never been involved with illegal drugs. He will testify that the two have often assisted each other with legitimate business and other legitimate personal matters.

Mr. Samhan will further testify that Mr. Haddad and his family are from adjoining villages in the West Bank, Palestine.

Samhan will further testify that he felt compelled by his upbringing to assist others, especially those from his part of the world.

B. TESTIMONY OF OTHERS

The Defense will call members of the South Florida community that have personal knowledge of Mohammed Samhan and his reputation in the community as one who routinely and consistently assists others.

1) Mounem Kattoura will testify that he has been the past president of the South Florida Chapter of the Arab Defense League. He will also testify that the has been the past president of the Arab American Cultural Club.

He will further testify that he does business with many persons that do business with Mohammed Samhan.

Based on personal knowledge, Mr. Kattoura will testify that Mohammed Samhan assisted and organized a march for Martin Luther King. He will further testify that Mohammed Samhan has been consistently sought out in the community to assist others in need. He will testify that Mohammed Samhan has routinely assisted victims of crime.

2) Nabil Dalag has known Mohammed Samhan for twelve years. He knows him through the business community and socially. He will testify that Mohammed Samhan routinely assists others. For example, Mohammed Samhan has assisted widows who need to send the bodies of their deceased husbands to the Middle East for a proper burial.

3) At Mr. Samhan's bond hearing, a letter was introduced by United States Immigration official, Richard Kalb. Mr. Kalb stated that Mohammed Samhan gave substantial time and assistance to the Catholic church in their quest to assist persons from Iraq that had political asylum claims. He is on the Defendant's witness list.

4) Ibrahim Ghantous, attorney at law, will testify that Mohammed Samhan routinely assists others. He will testify about

more than ten examples where Mohammed Samhan brought people to his office who needed immigration assistance. Mr. Samhan would not only run around for these people, but wait in the outer office of Mr. Ghantous for lengthy periods to see if they needed further assistance.

Mohammed Samhan refused any payments or benefits for assisting these people.

C. EXPERT TESTIMONY

The Defense has noticed the Government[3] and copied the Court on or about March 21, 2001 that it will call Dr. Walid Phares as an expert witness. Dr. Phares is an expert on Arab cultural traits.

Dr. Phares has testified before the United States Senate and has assisted the United States House of Representatives. He has written eight books and numerous articles. He is a full professor who teaches eight related courses at Florida Atlantic University at the undergraduate and graduate level. He is arguably the most qualified and credentialed expert on Arab culture.

Dr. Phares will testify in great detail about the longstanding historical, cultural and religious significance of the traditions and edicts that compel an Arab male to render assistance to another Arab male, especially those from the same

---

[3] The Government has filed no objections to this expert.

part of the world. He will testify that there is a strong social opprobrium and shame to a person and his family if one refuses a request to assist another.

## MEMORANDUM OF LAW

Fed.R.Evid. 404 (a) (1) specifically permits "evidence of a pertinent trait his character offered by the accused or by the prosecution to rebut same".

It is reversible error to prohibit relevant traits of character when proffered by the defense. United States v. Darland, 626 F.2d 1235 (5th Cir. 1980) cert. denied, 455 U.S. 1157; cited with approval by the Eleventh Circuit. United States v. Saldivar, 710 F.2d 699 (11th Cir. 1983).

There is a litany of relevant character traits. Using 404 (a) as authority, a court permitted several traits including the exact character trait at issue, a "tendency to stop and aid people in need". Deering v. State, 619 S.W. 2d 644,647 (Ark. 1981).

In addition, Fed.R.Evid. 406 permits the introduction of evidence of habit and routine practice if it is relevant to show that a person acted in conformity with the routine practice on a particular occasion.

The Eleventh Circuit has permitted the introduction of a habit or routine practice as long as it is consistently done and it is relevant to an issue in the case. Loughan v. Firestone Tire and Rubber Co., 749 F.2d 1519,1523-1524 (11th Cir. 1985)

13

D. CONSTITUTIONAL RIGHTS

In addition to the evidentiary authorities cited above, the Defendant also has the protections of the Sixth Amendment Constitutional rights of Compulsory process and Confrontation.

The right to call witnesses to rebut the Government's theory by evidence of habit, custom and practice is the sole defense. The Sixth Amendment guarantees the accused "compulsory process for obtaining witnesses in his favor". Washington v. Texas, 338 U.S. 14, 18-19 (1967).

The Circuits agree that only some evidence of the defense be required. The evidence of a legal defense is sufficient if it is weak, inconsistent, or of doubtful credibility. United States ex. rel. Perry v. Sielaff, 615 F.2d 402 (7th Cir. 1979).

Additionally, the Defense has the Sixth Amendment right to confront the Government's theory that Samhan's continued assistance to Mr. Haddad creates a strong inference of guilt.

CONCLUSION

Therefore, based on evidentiary principles and Constitutional protections, the Defendant has the right to present the defense of custom, practice and habit as his sole defense to the Government's theory that his assistance to Mr. Haddad is strong evidence of guilt.

## JURY INSTRUCTIONS

1. Expert Witness - Pattern no. 7.
2. Character Evidence - Pattern no. 11.
3. Duty to follow instructions, presumption of innocence - Pattern no. 2.1.
4. Reasonable doubt - Pattern no. 3.
5. Habit, custom, routine, character trait - Special from Evidence Code and Case law.
6. Prior consistent statement\Defendant with no prior - Pattern no. 6.3.
7. Possession with the intent to distribute - Pattern no. 73.
8. Knowledge of a controlled substance - special with case law.
9. Theory of the Defense - to be submitted.
10. Limiting instructions - as needed.

## TRIAL ESTIMATE

The Government has estimated that it will present its case in chief in approximately two weeks. Defendant Samhan respectfully requests 45 minutes for Opening Statement.

Defendant Samhan estimates that he will present five lay witnesses, one expert, the Defendant and one exhibit. The Defense estimates that the Defense case, including cross-examination, will take two full days.

The Defendant respectfully requests one hour and fifteen minutes for closing argument.

## PROOF OF SERVICE

I, Richard A. Hamar, declare: I am a citizen of the United States; I am over the age of eighteen years and not a party to this action; my business address is 2437 Briarcrest Road, Beverly Hills, CA 90210.

On May 29, 2001, I mailed this TRIAL BRIEF to Larry Bardfeld, Assistant United States Attorney, located at 500 E. Broward Blvd. Fort Lauderdale, Florida 33394 and those on the service list. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This was executed at Miami, Florida.

_____
RICHARD A. HAMAR