UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>MOHAMMED SAMHAN<br><br>        Defendant. | NO. 00-6211-CR-HURLEY/VITUNAC<br><br>NIGHT BOX<br>FILED<br><br>? 28 ?<br><br>CLERK, USDC / SDFL |

**MOTION TO DISMISS/SPEEDY TRIAL VIOLATIONS**

COMES NOW, the Defendant, Mohammed Samhan, and respectfully moves that this Honorable Court dismiss this action for the following reasons:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................ii

INTRODUCTION...................................................1

GROUNDS........................................................2

STATEMENT OF THE CASE..........................................3

MEMORANDUM OF LAW..............................................5

A.  CONSTITUTIONAL RIGHT.......................................5

B.  STATUTORY RIGHT...........................................11

88.9 CERTIFICATE..............................................12

CONCLUSION....................................................12

PROOF OF SERVICE

**TABLE OF AUTHORITIES**

A. CASES

Barker v. Wingo, 407 U.S. 514 (1972).........................2,5,6

Dogget v. United States, 505 U.S. 647 (1992)................5,6

United States v. Clark,
    83 F.3d 1350 (11th Cir. 1996).........................7,10

United States v. Hoslett,
    998 F.2d 648 (9th Cir. 1993)............................11

United States v. Tobin,
    840 F.2d 867 (11th Circuit 1988).....................11,12

B. CODE SECTIONS

18 U.S.C. 3161..............................................2,11

## INTRODUCTION

The Defendant, Mohammed Samhan, has languished for over 425 days as of October 1, 2001 with the specter of a criminal trial that will not only cause incarceration for more than one decade, but certain banishment from the country he loves and separation from his United States citizen wife and children.

Knowing the tortures of waiting for such a fate and the other forms of prejudice that result, the Defendant has firmly objected each time to continuances that have been based on not much more than a crowded docket and the typical morass of the schedules of counsel in multi-defendant cases. This Honorable Court has recognized the subjective prejudice of such delay and has even invited this Defendant to move to sever this matter(R. 396)[1].

The plot has now thickened. The Defendant, who grew up in the West Bank Palestinian town of Nablus[2], is now confronted with the Hobson's choice of waiving his right to a speedy trial or facing

---

[1] Although this Defendant played a limited role and is not the leader or principal defendant, the Government took an adamant position against severance and refused to attempt to reduce the trial time it would spend against several defendants for a separate trial against Defendant. Based on this assertion, this Honorable Court could not justify a total duplication of efforts and three week trial. The case against the Defendant based on his involvement would have approximated three days.

[2] Although the people of Nablus were seen dancing joyously in the streets following the vile attack on our homeland, Mr. Samhan is an anti-terrorist who was granted political asylum because of a well founded fear of persecution because he resisted the efforts of the terrorist group Hamas to recruit him.

1

a trail with a jury whose members will not be able to guarantee that they can be fair to a Defendant from Nablus.

Based on the law and facts, DISMISSAL is the only just result.

GROUNDS

I

**THERE IS A PRESUMPTION OF PREJUDICIAL DELAY, AND ACTUAL PREJUDICE ESTABLISHED PURSUANT TO THE SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL AND BARKER V. WINGO.**

II

**DISMISSAL IS THE REMEDY FOR THE DENIAL OF THE RIGHT TO TRY THIS MATTER WITHIN THE SPEEDY TRIAL PERIOD AS ENUMERATED IN 18 U.S.C. 3161.**

III

**DISMISSAL SHOULD BE GRANTED FOR HUMANITARIAN REASONS AND IN THE INTERESTS OF JUSTICE.**

## STATEMENT OF THE CASE

The Defendant respectfully refers this Honorable Court to the Defendant's Trial Brief, if the Court needs additional information concerning the facts, Defense case and its witnesses.

The first wave of Defendants, including Mohammed Samhan, were arrested on July 29, 2000.

The Indictment was filed on August 1, 2000 (R.12). The gravamen of the charges was the possession of the precursor, pseudoephedrine, a substance used to manufacture methamphetamine.

The last Defendant to be arraigned, Raed Naser Aldin, was arraigned on October 10, 2000 (R. 160).

On November 7, 2000, the trial date in this matter was continued to March 5, 2001 (R.203). The Defendant, Samhan, objected to the continuance[3].

On February 8, 2001 the trial of this matter was continued. The Defendant, Samhan, objected to this continuance.

On February 27, 2001, the Government filed a superceding indictment (R.273). The gravamen of this Superceding Indictment was to now charge a conspiracy to possess methamphetamine, as opposed to merely a conspiracy to possess the precursor.

---

[3] The Defendant has ordered the transcripts of all of the status conferences to an including June 5, 2001. That was the conference where this Court continued this matter to the October, 2001 calendar. Official Court Reporter Pauline Stipes stated that she will send copies to counsel in the first week of October, 2001. Counsel will immediately notice the Court and parties of this attachment.

3

The Defendants were arraigned on the Superceding Indictment on March 14, 15, 16 and 21, 2001 (R.281-285; 293-303). At his arraignment on March 14, 2001, Defendant Samhan objected on the record to the failure of the Government to file a speedy trial report (R.282). Codefendant, Jaber, failed to appear on March 14, 2001 and remains a fugitive (R.297).

A status conference was conducted on June 5, 2001 (R.386). The Court set this matter for trial on the October, 2001 calendar as the second preference. Defendant Samhan objected to any further delays based on the loss of a witness, the prejudice of losing a possible exculpatory witness, increased guideline penalties, statutory speedy trial concerns, stress on the Defendant and his family and the increased costs of carrying a matter for this length of time. Defendant Samhan also suggested that his matter be transferred to a different judge that could begin this matter June 11, 2001 or June 18, 2001.

The Court, expressing concern for this Defendant based on anecdotal information from other Defendants with delayed cases, invited the undersigned to file a motion to sever.

The Defendant filed a Motion to Sever on June 6, 2001 (R.396). This Honorable Court denied same on June 20, 2001.

Besides the various time periods where no motions have been filed form the date of Indictment until July 7, 2001, there were no motions filed by Defendants awaiting trial from July 7, 2001

4

until August 17, 2001 and no motions by defendants waiting trial from August 17 until September 25, 2001[4].

At the status conference of March 14, 2001, the undersigned noted on the record that the Government had not filed a speedy trial report. Magistrate Judge Vitunac also indicated that the Court staff had not filed a speedy trial report. The Government in its Opposition to its Motion to Sever did not itemize the time between motions.

However, it is apparent that there has been more than 70 days of non-motion time from the date of the last arraignment until the filing of this motion.

## MEMORANDUM OF LAW

A. CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

The Sixth Amendment guarantees that in all criminal cases the accused shall enjoy the right to a speedy trial. This rule exists to insure that all defendants are treated according to decent and just procedures and "there is a societal interest in providing a speedy trial." Barker v. Wingo, 407 U.S. 514,519 (1972).

In assessing the merits of societies and Samhan's Constitutional right to a speedy trial, the Court must conduct a balancing test involving four factors: The length of the delay; the reason for the delay, the defendant's assertion of his right and the prejudice to Samhan. Barker, supra at 529. See also: Doggett v. United States, 505 U.S. 647,651 (1992).

---

[4] With the exception of Narog's Motion to Travel on September 4, 2001 that was granted on September 6, 2001.

None of these factors are either necessary or sufficient for a finding of the violation. <u>Barker,supra</u> at 533.

A. LENGTH OF DELAY

At the outset, the length of delay favors Defendant. As the delay approaches one year, there is presumptive prejudice. <u>Dogget,supra</u> at 652. The delay in this case has substantially exceeded one year.

B. REASON FOR DELAY

The reasons for the delay are not particularly compelling in the speedy trial sense. The reasons given initially were the crowded calendar of the court. Subsequently the reasons given were counsels' crowed calendar. Only when this matter began approaching one year did the Government begin to tender Jaber's flight as a principal reason. Jaber's flight, given that he is in an area where there is no extradition treaty and the U.S. Government would likely suffer violence if they attempted to kidnap him, is largely illusionary. Jaber's return to jurisdiction remains in his discretion. He has not chosen to exercise that discretion in favor of the Government.

Often cases are considered because they are complex or heinous. This is a routine case. The Government has tendered one expert witness on the manufacture of methamphetamine. His testimony will not be in dispute[5]. This is a case of surveillance and seizure. The entire case with several defendants will take

---

[5] The Government has offered a stipulation regarding the analysis of the alleged drugs. The undersigned has agreed.

6

three weeks to try. The Defendants were arrested due to possession of an over-the-counter drug, Sudafed.

Samhan's case alone would take three days to try. His role is not that of a leader or organizer.

## C. ASSERTION OF RIGHT

The Defendant has staunchly asserted his right to a speedy trial throughout the proceedings.

Additionally, the Defendant has requested a separate judge due to the backlog of Judge Hurley. The Defendant has also filed a motion to sever and request for a speedy trial.

The Government had a chance to cure the prejudice by agreeing to try Samhan separately when this Honorable Court generously invited Samhan to file a Motion to Sever because it had an available week to try the case of Samhan and a Defendant in custody. The Defendant offered to stipulate to much of the Government's case.

The Government did not reciprocate. It thwarted the effort of Defendant to fit this matter in the Court's available window by choosing not to attempt to edit its case. This Circuit has mandated that the Government's intent to delay a trial bolsters the chance for dismissal. United States v. Clark, 83 F.3d 1350,1353 (11th Cir. 1996).

## D. ACTUAL PREJUDICE

### 1. NATIONAL TRAGEDY

The prejudice to Samhan is dramatic and apparent as a result of the bombing of our nation by suspected terrorists from the

7

Middle East, and celebration by those from Samhan's home town of Nablus[6].

Although Samhan is not a terrorist, and it is expected that there are 12 jurors who will state they can fairly try this case, it is also clear that no loyal, sensitive American can be 100% sure that they can totally detach themselves from any prejudice against those from the Middle East town of Nablus.  The events surrounding September 11, 2001 are that painful and graphic.

There can be no reasonable dispute that Samhan would have had an opportunity for a fairer trial before September 11, 2001.

Furthermore, it is apparent that no amount of reasonable time can insure that Samhan will be in the same position as he was before September 11, 2001.  It is indisputable that some persons who lived through December 7, 1941 are still effected sixty years later and can not disassociate themselves from lingering prejudice against the Japanese.  Historians have written that our country was "serious" for a period of five years as a result of Pearl Harbor.  There were many examples of prejudice against innocent Japanese people for several years to come.

Prospective jurors in the instant case will still be noticeably angry and unsettled by persons from the Middle East for years to come.  There is also the likelihood of additional

---

[6] The exact location of Samhan's past residence in the Middle East is directly relevant to his defense of assisting another form a neighboring village load boxes in this District.  See: Trial Brief and Notice of Expert.

8

terrorist attacks that may even worsen Samhan's chances of obtaining a fair trial in the future.

2. THE LOSS OF JABER AS A WITNESS

The debriefing of Jaber does not clearly indicate that Jaber discussed that the Sudafeds were to be used to manufacture methamphetamine when Samhan was present with Jaber. It has one conclusory statement about Samhan. In fact, Samhan left a meeting with Jaber and codefendant Haddad while under Government surveilance. (See: Trial Brief for facts of this case).

The undersigned spoke with a member of the Government and learned that he heard that Jaber had not specifically indicated that Jaber had direct knowledge of Samhan's guilt before Jaber fled.

Jaber had agreed to cooperate. Samhan thus had the opportunity to call Jaber as a witness and cross-examine him, impeaching him with his debriefing notes. Had the case have been tried before March 14, 2001, Samhan would not have lost this advantage.

3. SUPERCEDING INDICTMENT

The Defendant was also prejudiced because the Indictment was superceded well after Samhan first objected to a continuance. Samhan is now charged with a conspiracy to possess and distribute methamphetamine as opposed to merely possessing a precursor. The guidelines have been almost doubled as a result of the delay, even

9

though no additional evidence justifying same was found linking Samhan to any methamphetamine[7].

4. ANXIETY AND CONCERN OF THE ACCUSED

Additionally, and importantly, this Defendant and his family have suffered the horrible stress of not knowing each day whether they will remain together as a family or whether Mohammed Samhan will be cast out of the United States in a homeless and vulnerable condition[8].

This is a legally cognizable factor of actual prejudice. Clark, supra at 1354. Samhan's anxiety and concern is greatly enhanced in comparison to other Defendants that are not deportable and have not been the victim of a well founded fear of torture by a terrorist group. That suffering is now at 425 days and counting.

5. OTHER CONCERNS

From a practical point of view, counsel for Samhan has had to prepare his case four times-Subpoena and cancel witnesses four times. This has been an additional burden on Defendant, his resources and his witnesses.

Therefore, Samhan has met all four elements of the right to dismiss this matter due to the Constitutional Right to a speedy trial. As mentioned, this is a case of heightened scrutiny because

---

[7] The methamphetamine was allegedly made in California. Samhan did not travel to California, nor had no contacts in California.

[8] Defendant's wife has been pregnant for almost ten months of this delay.

the Government could have cured prejudice and reduced the delay. Clark, supra at 1353.

B.  STATUTORY SPEEDY TRIAL RIGHT

18 U.S.C. 3161 (c)(1) requires a criminal matter to be tried within 70 days of indictment.

However, this period will begin to run anew from the date of the latest arraignment of any codefendant. Since Codefendant Raed Naser Aldin was arraigned on October 10, 2000, there has been a total elapsed time of approximately 240 days from last arraignment to commencement of trial.

The filing of a Superceding Indictment does not restart the speedy trial clock. U.S. v. Hoslett, 998 F.2d 648 (9th Cir. 1993).

Thus, the speedy trial period has run unless there have been more than 170 days chargeable to motions filed in this case from October 10, 2000 until commencement of trial. 18 U.S.C. (1)(f).

The Government argued in its Opposition to the Motion to Sever that the time is excludable from the time codefendant Gandi Jaber fled on February 13, 2001 and because there are apprehended defendants. United States v. Tobin, 840 F.2d 867 (11th Circuit 1988). The Government stated on June 5, 2001 at the conference at the Motion to Sever that Jabber would most likely return very soon. This factor appeared this Honorable Court when the Motion to Sever was argued.

However, Jaber has not returned. Jaber is in the Middle East is the most chaotic of times. No United States agent is going to

11

attempt to arrest him. It is unreasonable to believe that Jaber will return in a reasonable time as suggested by the Government the last time this issue was addressed. <u>Tobin,supra</u> simply does not apply to this situation. The unapprehended codefendants have been fugitives for over 430 days. <u>Tobin,supra</u> does not apply.

**CERTIFICATE PURSUANT TO 88.9**

On September 22, 2001 the undersigned discussed the grounds and the salient facts of this motion with Assistant United States Attorney Tom O'Malley. On September 22, 2001, the undersigned also had a detailed conversation with former Assistant United States Attorney, Larry Bardfeld, about the representations in this case and structured the facts of Jaber's statements with this conversation in mind. Mr. O'Malley opposes this Motion to Dismiss.

**CONCLUSION**

Had this very hard working and Honorable Court not had a congested calendar for the better part of the first year, this matter could have been tried. Had counsel for codefendants not had conflicted calendars this matter could have been tried.

The Defendant proposed the reasonable alternative of a visiting judge. The Defendant proposed the reasonable alternative of a separate trial. The Government would not pare down its case.

The Defendant, with presumptive prejudice on his side is now forever prejudiced by his place of birth, accent and mannerisms, the increased penalties, loss of a potential witness and other prejudice. The remedy of dismissal is bolstered because the Government had the opportunity to cure the prejudice.

12

The only fair, just and legal remedy is to dismiss the indictment against Defendant Mohammed Samhan.

Respectfully Submitted,

_____
Richard A. Hamar
Florida Bar # 127562
2437 Briarcrest Road
Beverly Hills, CA 90210
(310) 550-0460
(310) 550-0461
Attorney for Samhan

## PROOF OF SERVICE

I, Richard A. Hamar, declare: I am a citizen of the United States; I am over the age of eighteen years and not a party to this action; my business address is 2437 Briarcrest Road, Beverly Hills, CA 90210.

On September 28, 2001, I mailed this MOTION TO DISMISS SPEEDY TRIAL to Tom O'Malley, Assistant United States Attorney, located at 500 E. Broward Blvd. 7th floor, Fort Lauderdale, Florida 33394 and mailed this motion to those on the service list. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This was executed at Los Angeles, California.

_____
RICHARD A. HAMAR

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was mailed this 28 day of September, 2001 to:

Fred Haddad, Esquire
One Financial Plaza
Suite 2612
Ft. Lauderdale, Florida 33394

Richard Hamer, Esquire
2437 Briarcrest Road
Beverly Hills, CA 90210

Randee Golder, Esquire
P.O. Box 3756
Boynton Beach, Florida 33424-3756

John Howes, Esquire
633 S.E. 3rd Avenue
Suite 4-F
P.O. Box 697
Ft. Lauderdale, Florida 33302-0697

Tim Biosello, Esquire
33 North Dearborn Street
Suite 1015
Chicago, IL 60602-3105

Glenn Seiden, Esquire
33 North Dearborn Street
Suite 1015
Chicago, IL 60602-3105

Mark NeJame, Esquire
One South Orange Avenue
Suite 304
Orlando, Florida 32801

Theodore Weeks, IV, Esquire
One Lake Morton Drive
Post Office Box 3
Lakeland, Florida 22802-003

Paul Goodman, Esquire
33 North Dearborn Street
Suite 1015
Chicago, IL 60602-3105

Charles White, Esquire
2250 S.W. 3rd Avenue
Suite 150
Miami, Florida 33129

RICHARD A. HAMAR