EB 2 2 2002

UNITED STATES DISTRICT COURT    CLERK USDC / SDFL /

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,      )    NO. 00-6211-CR-HURLEY/VITUNAC
                               )
                Plaintiff,     )
                               )
        v.                     )
                               )
MOHAMMAD SAMHAN                )
                               )
                Defendant.     )
                               )
                               )
                               )
                               )
                               )
                               )
_____)

### SAMHAN'S SUPPLEMENTAL MEMORANDUM
### RE: EXPERT TESTIMONY

COMES NOW, the Defendant, Mohammed Samhan, and respectfully files this supplemental briefing on the use of expert Dr. Wallid Phares:

### BRIEF STATEMENT OF THE CASE

The Defendant gave proper notice pursuant to Fed.R.Evid. 702,703 along with a proffer and CV that he would use Dr. Wallid Phares to support the defense of habit and custom as a chronic and consistent good samaritan on March 19, 2001.  (See: Exhibit A).

The Defendant thereafter filed a trial brief which included a summary of the witnesses that would support the defense, a proffer of Dr. Wallid Phares and a memorandum of law on March 29, 2001.  (See: Relevant Excerpts Exhibit B).

The Government gave oral notice to the undersigned on the eve of trial, along with its supporting law, that it would be filing a motion in limine to exclude Dr. Phares.

The undersigned prepared a Response based on the oral notice. The Response pointed out that none of the government cases had application because 1) none were from the Eleventh Circuit and 2) each case lacked the proper facts to support an experts opinion. Thus, the issue of the proper use of a cultural expert was not reached.  Additionally, the case cited from the Second Circuit[1] actually provided support for the use of a custom similar to the instant case because the Court stated that such expert testimony may have been useful of the facts had supported the custom.  (See: Exhibit C).

The Government, thereafter, filed its Motion in Limine to exclude Dr. Phares after the commencement of jury selection on Februrary 5, 2002.  (See: Exhibit D).

The Court ruled in response to questions about opening statement that it was appropriate for the Defendant Samhan defend this matter on his habit and custom of being a good samaritan. (See: Court Reporter notes on 2\7\02.  The undersigned related this defense to the jury in opening statement, but did not reveal the use of expert testimony by agreement with the Government and Court.

---

[1]  <u>United States v. Imran</u>, 964 F.2d 1313,1317 (2nd Cir. 1992)

## NEW PERSPECTIVES AND DEVELOPMENTS

The Court has since presided over a jury selection that has been eminently fair in its efforts to nuetralize the stigma to Middle Eastern defendants in the aftermath of the tragic events of September 11, 2001 and the Israeli-Palestinian conflict that rages on.

However, this is a jury devoid of persons from the Middle East, or persons who would have any inkling of Middle Eastern customs.

Additionally, the Government has built its case on expert testimony. Witness Sustache spent almost an entire day discussing DEA registration requirements. Special Agent Remy provided a discourse on California law and all issues pertinent to the manufacture of methamphetamine.

Scores of other law enforcement officers gave expert opinions on what are indicia of legitimate behavior verses consciousness of guilt activities, such as counter-surveilance driving and taking pills out of the bottle.

The Government is also constructing a circumstantial case against Mr. Samhan based on the amount of times he has assisted Mr. Haddad transport, repack and ship boxes.

A jury devoid of any experience with the Arab culture will surely be susceptible to the argument, "why would a person spend so much time away from work and family if he did not have a stake in the action."

3

## MEMORANDUM OF LAW

The use of expert testimony to support habit and custom is supported by case law in this Circuit.  Loughan v. Firestone Tire and Rubber co., 749 F.2d 1519, 1523-1524 (11th Cir. 1985) . Additionally, the habit and custom to assist a friend is supported in dicta by Imran, supra at 1317.

> Dr. Sweetzer would have testified that a Pakistani custom obligates a person to perform a favor for a stranger when asked to do so by a friend.  Arguably the test-imony would have been useful if Ali, one of Imran's close friends[2]1, had sought Imran's assistance, but it was Reza whom Imran had never met, who made the request.

It is clear that this Honorable Court has discretion to permit such testimony if: 1) it would assist the trier of fact understand a relevant fact that the jury would not understand without expert testimony;  2) the expert is qualified; and 3) the facts support the expert opinion.

In reverse order, it is clear that Defendant Samhan will produce evidence from Richard Kalb, Ibrahim Ghantous and himself that Mr. Samhan is a chronic good samaritan.  Numerous acts of

---

[2]  Samhan and Haddad come from neighboring villages and have been close friends and assisting each other in Miami for the last decade.  Haddad has nothing in his background to alert a prudent person to illicit drug ventures.

4

assisting others with no gain will be detailed. The facts will demonstrate an exceptional and out of the order character in this regard. (See: Exhibit B). This is not the case such as in <u>Imran,</u> <u>supra</u> where the Defendant did not perform according to custom.

It will challenge a Government case which is highly circumstantial and depends on the jury believing that the Defendant is guilty because he assisted another load and ship boxes of cold medicine.

Secondly, there is no doubt that Dr. Phares is one of the most eminently qualifed experts, if not the most qualified expert, in the world. Dr. Phares is clearly a giant in his field, a Phd, an author of several books, numerous articles, a professor in the exact field of is expertise and a witness who has been called upon by the United States Congress. (See: Exhibit A).

Finally, there can be little doubt that the character trait of assisting others is so foriegn to those non-Arabs from Palm Beach County, that the expert testimony would be revealing on this core issue of the government and defense cases.

For example, on February 6, 2002 this Court stated to the jury that "You all have different points of view. You evaluate what a witness would say and you say this doesn't jive with <u>the way I look</u> <u>at the world</u>." The court urged this jury, in light of 9\11 "to use their heart and soul to do justice."

A lay person from Palm Beach County has no window into the world of the glorious and postive traditions of Arab culture and the longstanding trait of assisting others, especially from the

same part of the world.    Mr. Haddad and Mr. Samhan hail from neighboring West Bank villages.    Dr. Phares will testify that it is a shame on the family members of one who refuses the type of help requested by Mr. Haddad.    (loading and packing boxes).

Dr. Phares will richly layer his testimony with classic arabic literature, religious texts and personal study in the exact villages involved.    This is the world unknown to our jurors.

It would be a tradgedy if Mr. Samhan was convicted because the jury did not understand this custom.    As it would be a shame for the Government not to be able to produce its expert testimony on counter-surveilance driving and the host of other areas of expertise it required.

This is underscored in a case where this Court is contemplating a willful blindness instruction which lowers the burden of knowlege and almost acts as an expert instruction on human psychology.

Nor is the Government prejudiced.    It has had one year to prepare for this testimony.    It has had time to contact and utilize an expert to rebut the testimony of Dr. Phares, and prepare its mighty sword of cross-examination.

Additionally, the jury will not be unduly swayed by this testimony.    The expert instruction is fair and not overly solicitous to an expert.    The jury can disregard the testimony or accept parts and reject the balance.

This is an exceptional case.    Perhaps the first mulitdefendant, complex drug case with Middle East Defendants since

9\11\01.  We, as a society are a busy, busy group, racing breathlessly from one obligation to another.  We are not old school, we do not come from these unique Islamic and tribal values.

It seems a fair and just use of this Court's discretion to permit the defense, which probably has some disadvantage with an Arab client, to have the same right to produce a well qualified, relevant witness to assist the trier of fact.  Additionally, on a 403 analysis, the testimony will not be time consuming, confusing or distracting from the relevant issues.

A denial in these circumstances may even rise to the level of a deprivation of the Defendant's Sixth Amendment right to put on a defense as recognized by <u>Washington v. Texas</u>, 338 U.S. 14,18-19 (1967).

Accordingly, this Court should excercise its discretion to permit the testimony of Dr. Phares.

Respectfully Submitted,

Richard A. Hamar
Florida Bar # 127562
2437 Briarcrest Road
Beverly Hills, CA 90210
(310) 550-0460
(310) 550-0461
Attorney for Samhan

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 00-6211-CR-HURLEY/VITUNAC |
| Plaintiff, | |
| v. | |
| MOHAMMED SAMHAN | **NOTICE OF INTENT TO USE** |
| Defendant. | **EXPERT WITNESS; MEMORANDUM** |
| | **OF LAW** |
| | **(Fed.R.Evid. 702,703)** |

Kindly take notice that the Defendant, Mohammed Samhan, will be calling Dr. Wallid Phares as an expert witness pursuant to Fed.R.Evid. 702,703 and <u>Daubert v. Merrell Dow Pharmaceuticals,</u> <u>supra</u> based on the following:

## STATEMENT OF FACTS AND DEFENSE

From September 1999 until July 29, 2000 a vast quantity of Sudafed Cold medicine was distributed from a pharmaceutical warehouse in Fort Lauderdale to persons on the West Coast of the United States.

Although the defense has not been noticed, the Government will call an expert witness in its case in chief to establish that

— EXHIBIT A-1      —

Sudafed has the ingredient pseudoephedrine, which is one of eight ingredients used to make methamphetamine[1].

The Defendant, Mohammed Samhan, is involved in the Superceding Indictment and proof because he was present with other codefendants. He also helped pack and ship the Sudafed. He also had Sudafed cold medicine in box and loose form at his home. The Government will also produce evidence that Samhan drove in a counter surveillance manner.

A lead agent for the Government testified at an earlier hearing that Mohammed Samhan had no connection to the warehouse where the pills were stored. He did not travel to any out of state location where the legal cold pills were to be converted. He did not contact anyone out of state where the legal pills were to be converted. He had no relationship to anyone out of state connected to this matter.

There are no recordings of Samhan discussing this matter. There is no evidence that Samhan was paid any money for his assistance[2]. There are no informants who indicate Samhan has done anything wrong. Samhan made no admissions. There are no "pay and owes" incriminating Samhan.

---

[1]    The Defense has not been provided with any discovery that the Sudafed cold medicine distributed in the instant case was even sent to a laboratory to produce methamphetamine.

[2]    The Government found some money orders in the possession of Samhan. Samhan will establish the source of these funds and the purpose for having them.

No witness will testify that the Defendant was present when any alleged participants discussed whether the cold pills were going to be converted to methamphetamine[3].

The Defendant, Samhan, has no prior felony arrests, nor is there any evidence that he has ever been involved in illegal drugs.

The stakes are particularly high for Samhan and his family. His minor children are U.S. citizens, but Samhan is a deportable alien who obtained residency because of his refusal to join a terrorist group in the Middle East. Evidence at the bond hearing established that Samhan has done abundant community service in the South Florida community.

Samhan will testify. His defense is that he assisted a friend pack, store and ship, without knowledge that the Sudafed would be converted to an illegal drug. The friend, codefendant Haddad, is from a village ten minutes[4] from Samhan.

### THE EXPERT WITNESS

Dr. Wallid Phares resides in Miami, Florida. He is a full professor at Florida Atlantic University.

---

[3] The Government indicated to counsel that codefendant Jabber was going to plead and cooperate. Even on the morning of arraignment on the Superceding Indictment Jabber had not indicated Samhan was present at any meeting where the illegal plan was discussed. Unfortunately for Samhan, that is now apparently academic since Jabber's counsel advised Magistrate Judge Vitunac that Jabber has fled.

[4] Before emigrating, the two lived approximately one hour North East of Jerusalem.

A.  EDUCATION

Dr. Phares was educated at St. Josephs University in Beirut, Lebanon.  His dual majors were political science and law.  He also studied arab culture.

He obtained his Masters degree at the University of Lyon, France.

Dr. Phares obtained his PhD at the University of Miami in the fields of International Relationships and Middle East Studies.

B.  TEACHING EXPERIENCE

Dr. Phares is a full professor at Florida Atlantic University. He was hired in 1993.  He teaches or has taught eight undergraduate courses.   The subject matter includes: Middle East Politics; Comparative Politics; Ethnic Conflicts, Religion and World Politics; Jews, Christians and Islam; Politics and the History of the Middle East; and Clash of Civilizations.

Dr. Phares also teaches graduate and doctoral seminars.

He previously taught a curriculum of Middle East studies at Florida International University.

Dr. Phares has lectured in this subject matter at Colombia, George Washington University, Ohio University, The University of California Santa Barbara, The University of Colorado and others.

C. PUBLICATIONS

Dr. Phares has written eight books related to Middle East culture and politics.

He has written three articles on the subject matter and has prepared approximately 20 lectures related to this subject matter.

4

D. FIELD TRIPS

Dr. Phares has visited the cities where the Defendant, Samhan, and the Codefendant, Haddad used to live. He has interviewed young persons, students and professors in the area regarding questions related to his testimony.

E. PRIOR TESTIMONY

Dr. Phares has testified in proceedings before the United States Senate. He has provided Congressional briefings. He has also provided briefings to the State Department.

Dr. Phares has frequently testified as an expert in the Courts of the United States Immigration and Naturalization Service related to Middle East issues. He has testified in Chicago, Miami, New York, Philadelphia and Pittsburgh.

F. THE ANTICIPATED TESTIMONY

The Defense respectfully requests to elicit:

1) Arab males have a longstanding historical, cultural and religious tradition of assisting other Arabs. There is an extremely loss of face if this tradition is not followed. That trait is most intensely practiced the closer the persons lived near each other. That trait comes sharply into focus when both the person receiving and providing assistance are living in a foreign country. In the instant case, Samhan and Haddad are from neighboring villages.

Dr. Phares will testify that this trait predates the Koran. His testimony will be based on his personal academic research and study.

5

His testimony is information not known by the vast majority of lay persons.

His testimony is crucial to understanding why the Defendant, Samhan, would innocently spend numerous hours away from his family and business to assist another person from the Middle East.

2) that persons from this area of the Middle East have a longstanding tradition of trading. This is true even for professionals[5].

His testimony will be based on his personal academic research and study.

His testimony is information not known by the vast majority of lay persons.

His testimony is important to understanding by inferences and deductive reasoning why the Defendant, Samhan, would be further interested in assisting Haddad in a wholesale cold medicine venture, and why he might assume that a fellow trader would be legitimately dealing in this product[6].

3) in the event that voir dire exposes a significant bias against Arabs, that persons from the Middle East possess positive character traits for loyalty, honesty and in some cases lack of terrorism[7].

---

[5] Samhan is not a professional. He owns convenience stores and fits squarely into the area of the this expert testimony.

[6] Haddad also has a convenience store.

[7] This is particularly true of a person like the Defendant, Samhan, who risked his life and fled his homeland because he refused to join Hamas, a terrorist group, when recruited.

The testimony will be based on personal academic research, writings and lectures.

This testimony could be crucial to dispelling certain myths held by some prospective jurors in the District[8].

MEMORANDUM OF LAW

A. EXPERT WITNESSES

The United States Supreme Court requires that the hypothesis for expert opinion be based on reliable underlying principles and methodology.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993).  See also: Edwards v. Safety-Kleen Corp., 61 F.Supp. 1354 (S.D.Fla. 1999).

The testimony in the instant case will be elicited from an expert that has been taught, and done independently research and study.  Dr. Phares has actually visited the villages of Samhan and Haddad and interviewed numerous persons in this region.

It is clear that the qualifications and experience of Dr. Phares insures that this testimony will not be simple conclusory, or the parroting back of what he has read in books.

B.  THE RIGHT TO PRESENT A DEFENSE

The Sixth Amendment of the United States guarantees the right to prepare and present a defense.  Washington v. Texas, 388, U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).  Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct.  1038, 35 L.Ed.2d 297 (1973).

---

[8]  With this Courts permission, a questionnaire could be prepared by the Defendant, approved by the Government to better ferret out if some jurors are biased against Arabs.

In the instant case, the Defense of assisting another person from the same region is the crux of the defense.    It may seem highly suspicious and the Government will most likely argue that the Defendant would not have spend so much time with codefendants if he was innocent.

The average jury might accept such an argument based on his common sense and personal experience.    However, various cultures have traditions and traits not necessarily understood by a lay person who is not from that culture.

The Government will call several experts including an agent who investigated and who is assisting to prosecute the instant case to testify about counter surveillance driving being an indicia of guilt.

This area of testimony is far more subjective and less inclined to be academically verifiable than the testimony requested in the instant Notice.

The expert witness for the Government, who will testify on counter surveillance driving, does not have near the academic basis to so state his opinion as Dr. Phares.

/

/

/

/

88.9 Certificate

I, Richard A. Hamar, hereby certify that I personally spoke with Assistant United States Attorney, Larry Bardfeld, on March 14, 2001 and advised him of the use of this expert. He will study the qualifications and subject matter of this testimony and respond accordingly.

_____
Richard A. Hamar

CONCLUSION

It is respectfully requested that Dr. Wallid Phares be permitted to testify in the areas outlined above.

Respectfully Submitted,

_____
Richard A. Hamar, Fl.Bar 127562
2437 Briarcrest Road
Beverly Hills, CA 90210
(310) 550-0460
(310) 550-0461

9

PROOF OF SERVICE

I, Richard A. Hamar, declare:   I am a citizen of the United States; I am over the age of eighteen years and not a party to this action; my business address is 2437 Briarcrest Road, Beverly Hills, CA 90210.

On March 19, 2001, I mailed this NOTICE OF EXPERT WITNESS (PHARES) to Larry Bardfeld, Assistant United States Attorney, located at 500 E. Broward Blvd. Fort Lauderdale, Florida 33394 and all those on the service list.   I also sent this Notice by fax to Mr. Bardfeld.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This was executed at Beverly Hills, CA.

RICHARD A. HAMAR

10

## WALID ANTHONY PHARES
### Associate Professor
Department of Political Science
Florida Atlantic University
Boca Raton, Florida 33431
Tel: (561) 297-3215 Fax: (561) 297-2997
Internet: Phares@fau.edu

## EDUCATION

1992    Ph.D. in International Studies.
        International Relations and Middle East Studies
        University of Miami.

1981    B.A. in Political Sciences and Public Administration
        Saint Joseph University. Beirut

1980    M.A in Public Law, with emphasis on international
        law. University Jean Moulin, Lyon III. France

1979    B.A in Public Law. The Lebanese University. Beirut

## TEACHING EXPERIENCE

1998 - 2001    Associate Professor. Department of Political Science
               Florida Atlantic University

1995 - 1998    Assistant Professor. Department of Political
               Science. Florida Atlantic University.

1993 - 1995    Visiting Professor. Department of Political Science.
               Florida Atlantic University

Fall 1995      Visiting Professor. Department of Religious Studies
               Florida International University

1991 - 93      Adjunct Professor. Department of international
               relations. Florida International University

1993 - 1998    Lecturer in Middle East Studies. Lifelong Learning
               Society, FAU, Institute of retired Professionals,
               University of Miami, Elders Institute, FIU.

Spring 1992    Teaching Assistant. Graduate School of International
               Studies. University of Miami.

— Exhibit A-2    —

```
1983 - 84          Adjunct Professor of Political Sociology.
                   Saint Joseph University. Beirut.
```

## COURSES TAUGHT

### Graduate

```
Graduate seminar: The Comparative Politics of Ethnic Conflict
Graduate seminar: Comparative Politics of Nationalism
Graduate seminar: Comparative Politics of the Middle East
```

### Undergraduate

```
Religions and World Politics
Comparative Politics of the Middle East
Comparative Politics of Ethnic Conflict
Comparative Latin American Politics
Comparative European Government
Comparative Religions: Jews and Christians Under Islam
Comparative Politics
Religious Conflict in the Middle East
International relations of the Middle East
World Politics
Introduction to World Politics
Political Sociology
```

### University of Miami IRP

```
Arab Politics
Arab History
Arab Culture and Traditions
Middle East Updates
Islamic Thought
Arab-Israeli Conflict
```

### Recent Teaching Awards

"Excellence in Teaching Award". Life Long Learning Society. Florida Atlantic University. Boca Raton. April 23, 1999

TIP Award. Florida Atlantic University. Fall 1998

"Excellence in Teaching Award." Institute for Retired Professionals University of Miami. Fall 1997

### Academic Advisor and coordinator

```
Advisor, Human Rights Student Organization. FAU. 1995-2001
Advisor.Student Association for Middle East Studies. FAU. 1999-2001
Advisor, Latin American Student Association. FAU. 1995-2001
Coordinator, Chastain Johnson Middle East Studies Special Project.
```

Third World Studies Association, Gainsville, panelist. 1993

### REVIEWER

*Middle East Journal, Middle East Quarterly, Aram Journal, International Journal of Group Rights.*

### PROFESSIONAL MEMBERSHIPS

American Political Science Association, 1993-99

International Political Science Association, 1994-97

Third World Studies Association, 1992 - 1999

Middle East Studies Association of North America, 1991-99

Florida Political Science Association, 1995-99

Middle East Institute, Washington, D.C., 1991-92

Advisory Board member, Barry University Middle East Peace Conferences. 1994-99

Advisory Board member, Pearce Chair Institute for Peace Studies. University of Miami. 1992-95.

Advisory Board member, Religious studies. Florida International University. 1994-99

International Advisory Board member, San Juan University, Costa Rica. 1995-96.

Committee on Foreign Relations. Miami. 1994.

Lebanon Bar Association, 1982-99


## COMMUNITY SERVICE

LECTURES

More than 100 lectures since 1991. Most recent lectures at. Deerfield Progressive Forum, Palm Beach   County Law Enforcement Agencies, Temple Beth El (Boca Raton).

Community lectures 1993-1996:
     Florida: Miami, WPB, Tampa Sarrasota, Orlando, Ft. Lauderdale, Boca Raton, Lantana, Deerfield, Delray, C. Canaveral. National: Washington, D.C., New York, Boston, Chicago, Detroit, New Jersey, Atlanta, Pittsburgh, Virginia Beach, New Orleans, Denver, Chicago, Detroit.

1998-2001
Advisor, Florida Society for Middle East Studies. 1997-2001

## OTHER PROFESSIONAL EXPERIENCE

### Journalism

1993 - 94      Publisher-Editor, *Mideast Newswire*. Weekly report
               on the Middle East: Miami 1994-1999: issues
               analytical releases through www.cmep.com

1982 - 86      Editor. *Sawt el-Mashrek* (Voice of the Orient), a
               weekly, then monthly political newspaper. Beirut.

1980 - 81      Editorialist. *Al-Maruni*, weekly. Beirut, Lebanon.

1979 - 80      Editorialist. *Al-Ahrar*, daily. Beirut, Lebanon.

### Radio commentator

Commentator and host of educational and political programs in
Arabic, French, and English for Lebanon's radios including:

1992 - 1993    International Analysis, Voice of the South

1990           Political Critique, the Lebanese State Radio

1988 - 1989    History of the Middle East, Radio Free Lebanon

1986           Weekly Political Analysis, Voice of Lebanon

1986           *Panorama de L'Actualite*, Radio Free Lebanon

1984           Pluralism in the Middle East, Radio Free Lebanon.

### Legal work

1991 - 1994    Consultant: Immigration, political evaluation Miami

1986 - 1990    Attorney. Walid Phares Law Office. Beirut

1982 - 1986    Associate. Roland Gemayel Law Office. Beirut

## RESEARCH AND SCHOLARSHIP

### Books

*Lebanese Christian Nationalism: The Rise and Fall of an Ethnic Resistance.* Boulder and London: Lynne Rienner Publishers. 265 pages 1995.

[Pluralism in Lebanon] *Al-Taadudya Fi Lubnan.* Kasleek: University of the Holy Spirit Press (Lebanon). 365 Pages. 1979.

### Monographs

Israel's Alternative Policy in Lebanon. Policy Papers. Ariel Center for Policy Research. Tel Aviv. 1999. 46 pages

History of the Middle East: Trends and Benchmarks. IRP University of Miami Press. 1998, 1999. 61 pages

[The Background of the Iranian Khumainist Revolution]. *Khalfyat al-Thawra al-Iranya al-Khomeinya.* Beirut: Sawt el-Mashreq Publications, 113 pages. 1987.

[The People of Lebanon] *Il Pueblo del Libano.* Mexico and Ecuador: Sociedad del amigos del Libano, 68 pages. 1989.

[The Awakening of the Maronites], *Sahwat al-Mawarina.* Beirut: Mashreq Editions, 85 pages. 1985.

*Thirteen Centuries of Struggle* Beirut: Mashreq Editions  82 pages, 1985.

*Le Peuple Chretien du Liban* [The People of Lebanon, Thirteen Centuries of Struggle]. Mashrek Editions. 83 pages 1984.

[Democratic Dialogue]. *Hewar Democrati.* Beirut: Al-Tajamu', 100 pages. 1982.

[The Concepts of Arabization and Assimilation]. *Utruhat al-Ta'rib wal Tathwib.* Beirut: Mashreq Editions, 163 pages. 1980.

## Chapters

"The Captive Nations." In *The Forgotten Millions: The Modern Jewish Exodus from Arab Lands* . Ed.Malka Shulevitz. Cassel: London and New York. 1999. P.15-32

## Refereed Journal Articles

"Middle East Enclaves," Middle East Quarterly. Winter 2001

"Minority Human Rights in the Middle East." Journal of Assyrian Studies. 2000

"Sudan's Civil War: America's Policy." *Middle East Quarterly.* March 1998. P. 19-32

"Lebanon, Syria and the security zone," [Hebrew] in *Nativ*, Israeli Journal of Geo-Politics. Spring 1997

"The security zone in south Lebanon." *Middle East Quarterly*. Fall 1996.

"The Intelligence Services during the 1975-1990 War of Lebanon." *Journal of Intelligence and Counter Intelligence.* 1994

"The Nationalist Movement and Greater Lebanon 1920." *The Journal of South Asian and Middle Eastern Studies.* Summer 1993.

"Mideast Future: The Syrian-Iranian Alliance." *Global Affairs.* Summer 1992.

"Ayat Uruba fi Lubnan?" [Discussion of Lebanon's Arab Identity]. *Panorama de L'Actualite.* Lebanon. Fall 1982.

## Work in Progress

### Book

*Middle East Ethnic Conflicts.*    McFarland Publisher (South Carolina). 2002

### Testimony and legislative research

Testified to the US Senate Foreign Relations Committee, Subcommitte on the Middle East and South East Asia, in a hearing on "Persecution of religious minorities in the Middle East." May 1, 1997. (Congressional Record)

Participated in the elaboration of the "Introduction of the Freedom from Religious Persecution Act" May 21, 1997 at the US House of Representatives. Letter of recognition and Congressional Record.

Participates regularly to Congressional Briefings and briefings at the State Department (1999-2001)

### Invited University and research centers Lectures

Ariel Policy Research Center, Tel Aviv. "Security Zone and Policy alternatives." June 1999

Public Policy and Ethics Center. Washington, D.C. Florence. "Minorities under Islamic Regimes." (sent paper). May 1999

Assyrian Studies Association and College Park University, Middle East Studies. "Minority Human Rights in the Middle East." Chicago. 1998.

Syriac Studies Center. "Syriac as cultural tool." Sweden 1997

College Park University, Chicago. "Assyrian and Maronite Strategic Relations." Middle East Studies Center. 1996

Hebrew University, 1996: "Ethnic Conflict in Lebanon 1975-1990"

George Washington University, 1995: "Ethnic Terrorism."

Columbia University, 1995: "Hist. background of Slavery in Africa"

Regent University, "Islamic paradigm in World Politics."

University of Pittsburgh, 1993: "Lebanese Nationalism"

University of Colorado at Boulder, 1993: "Mideast Pre-Arab ethnics"

U.C Santa Barbara, 1992: "Israeli & Lebanese relations"

U. C. Berkeley. San Francisco, 1992: "Mideast Ethnic Minorities"

Loyola University, New Orleans, 1992: "Islamic Fundamentalism"

Pennstate University, Pennsylvania, 1992: "The Taif agreement"

Columbia University, New York, 1992: "Syria's influence in Lebanon"

Barry University, Florida, 1991-1994: "Peace Process & Minorities"

Florida International University 1991-1996: "Nationalism revisited," "Ethno religious conflicts,"

University of Miami 1991 - 1992: "New nationalism and international relations," "The Arab-Islamic Conquest," "Wither Lebanon."

American University of Beirut: "Arabism and Pluralism." 1988

The Lebanese University: "Democratization of a Society at war" 1987

Holy Spirit University, Kaslik: "Pluralism and Federalism" 1986

Saint Joseph University: "Bi-nationalism in the Middle East" 1984

A.L.B.A. Architecture College: "Resistance and Pluralism," 1980

ESIB School of Engineering: "Pluralism and Decentralization, 1979

### Professional papers

"Ethnic Conflict in Sudan." Florida Political Science Association. Spring 1997.

"Political Economy of Peace." FAU - Ben Gurion University Symposium. Spring 1997.

"Minority-Majority relations in the Post Cold War Middle East." Third World Studies Association annual meeting. Alabama, 1996.

"Ethnic claims of religious minorites in the Middle East." American Political Science Association, annual meeting, 1996.

"Jihad: A Conceptual study." Conference on Terrorism and Fundamentalism, Florida International University. September 1996.

"International Terrorism: The Ethno-Religious roots of Middle East Terrorism." Seminar on Ethnic and Religious Dimension of International Terrorism. Terrorism Studies Program. George Washington University. May 1996

"Historical roots of Slavery in Sudan." Paper presented at the First conference on Slavery in Sudan and Mauritania. Columbia University. New York. March 1996

Human Rights Association for the Middle East, New York : "The Failure of Government protection: Case of Egypt, Sudan and Iran." December 1995.

"Post Taif Lebanese Forces: The end of isolationism." Annual conference of the Middle East Studies Association. University of

Arizona. October 1995.

"Minorities in the Middle East: Statehood or Assimilation." Paper presented at the annual convention of the American Political Science Association. New York. September 1994

"Minorities and Middle East Peace Process." Symposium "The Road to Peace: The Challenge of the Middle East." Barry University. March 1994.

"Minority Ethnonationalism in the Middle East: Current Trends." Round Table Conference of the Research Committee on Political Education of the International Political Science Association. Florida Atlantic University. January 1994.

"Non-Arab, Non-Moslem ethnicities in the Arab-Moslem Middle East: An Overview." The 16th Annual Conference of Third World Studies. University of Nebraska at Omaha. October 1993.

"Non-Arab Ethnic Groups in the Middle East: Current Trends." Paper presented at the Second Annual Conference of the Third World Studies Association. University of Florida at Gainsville. Oct. 93

"Democratic Alternatives." Workshop "Democracy in the Middle East." Annual Convention of the National Alliance of Lebanese Americans. Washington, D.C., June 1992.

"The Impact of Nationalism on World Politics." Graduate School of International Studies. University of Miami. March 1992.

"Whither Lebanon: The Historical Development of the Lebanese Independence." Middle East Studies Institute. Graduate School of International Studies. University of Miami. November, 1991

"Kissingernoia, a perception of American Foreign Policy." Graduate School of International Studies. University of Miami. August 1991.

"Al Taadudiya al-Qawmiya," [National Pluralism], Seminar on "Future Coexistence." American University of Beirut. November 1984

"Les Chretiens du Moyen-Orient: Approche Historique." [The Christians of the Middle East: A Historical Approach]. Workshop on the Middle East. World Congress on the Maronites. Montreal. July 18, 1985.

"Asbab Istid'af al Kiyan al Lubnani" [Weakening of the Lebanese entity] Symposium on Lebanon's politics, Kaslik University. Beirut, February 1982

"L'illegalite de la Presence Syrienne au Liban: Etude de Droit Compare'." [The illegality of the Syrian Presence in Lebanon: A comparative Legal study]. Saint Joseph University. June 1981.

Published in the Daily *Reveil* in July 1981.

*"Dirassa fil ideologia al-Dhimmiya."* [A study of the ideology of Dhimmitude]. Conference on "Arab Nationalism," Kaslik University 1981

*"Le Plateau Continental dans la Jurisprudence Internationale."* [The Continental Plate in International Jurisprudence]. School of Law and Political Science. Universite Saint Joseph. Beirut. May 1979.

### Research contribution to Government

Advised the staff of the Near East Subcommittee of the Foreign Relations Committee of the United States Senate on Iran and Lebanon June 1, 1997

Worked with the staff of Congressman Frank Wolfe and Senator Arlen Specter on the "Freedom from Religious Persecution Act of 1997": Legal and Administrative implications on immigration and emigration. June 1- July 15, 1997

Assist the Congressional Task Force on Terrorism and Unconventional Warfare, as a Middle East expert: 1996-1997

Lectured to Law Enforcement Officials (Palm Beach County, FL) on "International Fundamentalist Terrorism." November 30, 1996

Advisor to the Ministry of Foreign Affairs of the Republic of Lebanon in 1989-1990

### Research contribution to media

Author of articles in English, Arabic, and French in newspapers and publications, including:

**U.S.A.**

| | |
|---|---|
| Dailies | *Sun Sentinel* (South Florida) |
| Weeklies: | *Near East Report* (Washington, D.C), *Beirut Times* (Los Angeles), *The Lebanese American Journal* (New York), *Al-Hoda* (New York). The *Miami Jewish Tribune* *The Jewish Journal*, (New York, Florida). *The Jewish Press*, (New York). *The Jewish Post* (New York) *Mideast Newswire* (Miami). *Israeli and Global News* (New York, and WPB) |
| Periodicals: | *Lebanon File* (Washington, D.C). *Assyria Political Review*, *Assyrian Star*, *Assyrian Guardian* |

**Abroad**

Canada :     *Le Devoir* daily, (Montreal).
Israel :     *The Jerusalem Post, The Jerusalem Report. Nativ*
             (Hebrew)
Lebanon:
             Dailies:   *Al-Amal, Al-Ahrar, Al-Liw'a, Le Reveil*
             Weeklies:  *Al-Massira, Sawt Al-Mashrek, Al-Maruni,*
                        *Al-Nahar al-Arabi wal-Douali*
             Monthlies: *Mashrek International, Al-Shaab al-*
                        *Massihi*

**Interviews**

Interviewed by reporters from various media including:

**U.S.A**      1991 - 1999: CNN, NBC (S. Florida), CBS (S. Florida)
             PBS (S. Florida), CBN, CBS radio Network, Television,
             American Community Network Radios in New York and
             Washington D.C., Channel 36 T.V. Arab Forum (Miami),
             Insight TV (Orlando), Radio Waxy (Florida), WEZE radio
             (Boston), TBN, CBS (Channel 5, Palm Beach, FL)
             Univision TV (Spanish-Miami), Channel 6 CBS (Miami)
             Radio Voice of the Assyrians (Chicago), Beit-
             Nahrein T.V. Network (California and Chicago) KTRU
             radio (Houston), WMBM radio (Miami). *The Miami Herald,*
             *Sun Sentinel* (Broward, Florida), *The News* (Boca Raton,
             Florida) *Beirut Times* (National), *Miami Jewish*
             *Tribune, The Boston Jewish Tribune, Palm Beach Jewish*
             *Journal, Bt'zedek* Magazine, *Algemeiner. Washington*
             *Jewish Week, Israeli and Global News, Lebanon*
             *Bulletin,* TBN national TV.

**France:**    1985-1990: T.V. Antenne II, Radio France
             International, Radio France Inter, Radio Europe I,
             Radio Monte Carlo, local radios, Agence France Press.

**Switzerland:** 1989: Television Suisse Romande, Radio Suisse
             Internationale, *La Gazette de Lauzanne, La Gazette de*
             *Geneve.*

**Vatican:**   1989: Radio Vatican. 1996 Catholic News Service

**Germany:**   1981: The German T.V.

**Israel:**    1982 - 1996: Israeli T.V., Kol Israel Radio, *Yedeot*
             *Ahronot, Jerusalem Report, Jerusalem Post.*

**Qatar:**       *Al-Qabas*. Al-Jazeera TV

**Others:**      Interviews in various media of Canada, Mexico,
                 Holland, Italy, Belgium.

**Lebanon:**     Interviews by newspapers, magazines, radios
                 and T.V.s including: *La Revue du Liban, Magazine,
                 Monday Morning, Al-Nahar, Al-Anwar, Al-Diyar, Al-
                 Safir, Al-Liwa, Al-Massira, Al-Unfuan, Al-Nahar, Tele
                 Liban, LBC, C 33,* etc.

### Research contribution to International Conferences 1982-1999

Contributed to conferences on areas and fields of expertise

| | |
|---|---|
| Sweden: | Aramaic Academic Association. July 1997 |
| Israel: | International Christian Congress on Jerusalem 3000, February 1996 |
| Lebanon: | Mashrek Research Center Seminars 1981 - 1990 |
| Switzerland: | Seminar on Diaspora identity. Council of the Lebanese Organizations in the Diaspora. Lausanne. October 1989. |
| Cyprus: | Seminar on Diaspora identity. World Maronite Union. Limassol, September 1988. |
| Belgium: | Lecture, Association Libano-Belge. February 1987 |
| France: | Lectures to Students Associations. Paris, 1985-1987 City Hall of Strasbourg 1987 Council of Political Analysis of the CRIF, 1986 |
| Brazil: | World Lebanese Cultural Union, Sao Paolo, 1986 . |
| Uruguay: | World Youth Congress, Montevideo, 1986 . |
| Canada: | World Congress on the Maronites, Montreal, 1985. |

### SERVICE TO THE PROFESSION

PARTICIPATION IN PROFESSIONAL CONFERENCES

Chair, discussant, panelist, moderator including at:

Assyrian Academic Society, 1997. 1999
Syriac Studies Association. 1997
Middle East Studies Association, chair-discussant. 1997
Florida Political Science Association, chair, 1997
Florida International University, Peace Process Panel, 1996
Barry University Middle East Peace Conference, panelist. 1996
Florida Political Science Association, round table, 1995
Barry Univesity Inter Faith Conference, panelist. 1995
Middle East Studies Association, chair. 1994
Third World Studies Conference, Omaha, panelist. 1994
Barry University Middle East Peace Conference, panelist. 1994
Int. Political Science Association, B. Raton, panelist. 1994

.

Committee on Human Rights under Islam, chair, panelist. 1994-97

MEMBERSHIP IN THINK TANKS AND ORGANIZATIONS

Board member, The Jerusalem Institute for Western Defense, 1996-1999

Advisor, The Florida Society for Middle East Studies, Boca Raton 1995 - 1999

Advisor, The Miami Committee on Middle East Studies, 1996-1999

Chairman, Academic Committee for Human Rights in the Islamic World, 1993-1999

Board Member, American Anti-Slavery Group, Boston. 1995 99

Member, Coalition Against Slavery in Sudan and Mauritania. 1995-99


Member, World Lebanese Organization (WLO), 1991-1999

Executive Board Member, World Maronite Union, 1988-1999

Advisor, General Union of Lebanese Workers, 1985-1990


COMMUNITY DISTINCTIONS

Hadassah distinction: Broward. 1999

Anti Defamation League, Boca West, March 4, 1999

Florida Society for Middle East Studies. Boca Raton. Fall 1998

Brandeis University Library. Honorific distinction. Boca Raton 1998

Anti Defamation League, Leon Minkoff Memorial plaque. December 10, 1997

Honorific distinction: Boca Torch Club 1996

Honorific distinction: The City of Ariel 1994

Honorific Distinction, the National Alliance of Lebanese

Americans, Washington, D.C. 1992

Recognition, World Cultural Lebanese Union, Ministry of Foreign Affairs, Beirut, 1986.

LANGUAGES

```
Lebanese:   Native
French:     Fluent
Arabic.     Fluent
English:    Fluent
Spanish:    Basic
```

SPECIAL COURSES

```
1985       Studies in Sociology. Saint Joseph University
1980       Doctoral courses in Public Law. Saint Joseph University
```

2.  Richard Kalb - A lay witness who is an immigration official, residing and working in Orlando, Florida.  Through social contact and community service with Samhan, he will testify about Samhan's character trait and custom of assisting others involving the Catholic Church and Iraqi immigrants claiming political asylum.

3.  Ibrahim Ghantous - A lay witness who is an attorney with offices in Miami, Florida.  He will testify about Samhan's routine and consistent habits, character traits and customs of assisting others.

4.  Mounem Kattoura - a lay witness who is a leader in the Arab American community in South Florida.  He will testify about Samhan's routine and consistent habits, character traits and customs of assisting others.

5.  Nabil Dalag - a lay witness.  He will testify about Samhan's routine and consistent habits, character traits and customs of assisting others.

6.  Dr. Walid Phares - An expert witness who will testify about the history, cultural and religious custom and requirement of assisting others, especially those from the same part of Palestine.

7

- EXHIBIT 13        -

The Defendant has filed an extensive Notice of Intent to call Expert Witness over sixty days ago.   Dr. Walid Phares is highly qualified witness.   R. 322.

7.   Defendant, Mohammed Samhan - the Defendant will testify about his activities in relationship to the charges and his relevant background.   He has no prior felony arrests.

## EXHIBITS

The Defendant anticipates that he is the fourth and final defendant at trial in the order of the Superceding Indictment.   He therefore, respectfully requests that the five hundred series be reserved for his exhibits.

1.   Exhibit 500............An aerial overview of the homes of Rabah El Haddad, Defendant Samhan, the convenience store of Samhan and the location of the business, Pak Mail, that packed the boxes of Sudafed.

The Defense has offered this Exhibit for viewing to the Government weeks ago and offers this Exhibit for viewing to all Defense counsel.   Contact the undersigned.

## EVIDENTIARY ISSUES

### EVIDENCE OF HABIT, ROUTINE PRACTICE
### AND PERTINENT CHARACTER TRAIT

The Defendant respectfully requests that this Honorable Court permit the introduction of his habit, routine practice and the pertinent character trait of assisting others pursuant to

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,        )        NO. 00-6211-CR-HURLEY/VITUNAC
                                 )
                Plaintiff,       )
                                 )
        v.                       )
                                 )
MOHAMMAD SAMHAN                  )
                                 )
                Defendant.       )
                                 )
                                 )
                                 )
                                 )
                                 )
                                 )
_____)

## SAMHAN'S RESPONSE TO GOVERNMENT'S MOTION
## TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY

COMES NOW, the Defendant, Mohammed Samhan, and respectfully responds to the Government's motion[i] to exclude the testimony of expert Dr. Walid Phares as follows:

### BRIEF STATEMENT OF THE CASE

Literally on the eve of trial, the Government moves to exclude the expert testimony of Defendant almost one year after the Defendant has provided notice. This matter has been set for trial three times since the Defendant gave notice that he would use Dr. Phares on March 19, 2001.

_____

[i]    The Defendant has not seen the motion of the Government. On January 31, 2002, the Government advised counsel that it would be filing same and provided the cases it would be citing

-EXHIBIT C         -

The Defendant has prepared this case for trial four times and should not have to contend with disruption or elimination of its principal defense after reliance on same and extensive preparation for this long a period of time.

## MEMORANDUM OF LAW

The Government has not cited any precedent in the Eleventh Circuit to rebut the case in Defendant's expert notice from this Circuit. Loughan v. Firestone Tire and Rubber co., 749 F.2d 1519, 1523-1524 (11th Cir. 1985). And the cases cited by the Government outside of our Circuit are wholly inapposite because: 1) the expert was not qualified (i.e. U.S. v. Rubio-Villareal, 927 F.2d 1475 (9th Cir. 1991); or 2) the facts the expert would testify to are not consistent with the facts of the case, or are irrelevant to guilt or innocence (i.e. U.S. v. Sayakhom, 186 F.3d 928 (9th Cir. 1999), U.S. v. Ravel, 930 F.2d 721 (9th Cir. 1991), U.S. v. De la Garza, 462 F.2d. 304 (D.C. Cir. 1972), U.S. v. Ruelas-Altamirano, 463 F.2d 1199 (9th Cir. 1972).

However, the Government has cited one case that is strikingly similar to the instant case and bears close scrutiny.

> Dr. Sweetzer would have testified that
> a Pakistani custom obligates a person to
> perform a favor for a stranger when asked
> to do so by a friend. Arguably the test-
> imony would have been useful if Ali, one
> of Imran's close friends, had sought Imran's
> assistance, but it was Reza whom Imran had

2

never met, who made the request.

U.S. v. Imran, 964 F.2d 1313,1317 (2nd Cir. 1992).

Therefore, the expert was excluded because the facts did not fit the custom, not because courts can exclude evidence of a custom that is relevant to a defense. Therefore, Imran,supra actually supports the use of the expert in the instant case.

The instant case does not suffer from the inadequacy of Imran,supra because Dr. Phares will testify to a custom that fits the facts of Samhan's defense. Several witnesses and Samhan will overwhelmingly establish that Samhan consistently assisted others.

Also distinguishable from all of the cases cited by the Government, is that in those cases, the attempted use of the expert did not directly rebut the Government's principal theory. For example, in Ruelas-Altamirano,supra the Government merely had to establish that a Mexican police officer had knowledge that he crossed the border in a vehicle laden with marijuana.

The defendant attempted to establish with expert testimony that favors are often given to and accepted by Mexican police officers[2]. The Government's case had nothing to do with the custom.

However, in the instant case, the Government's case is highly circumstantial and depends on the jury believing that the Defendant is guilty because he assisted another load and ship boxes of sudafed cold medicine

---

[3]  The evidence was excluded because the defendant could not even establish that he asked to borrow the vehicle.

3

Therefore the custom of assisting others is the crux of the Government's case and the crux of the defense case. The Government will ask the question of the jury, why else would the Defendant go to all of this trouble to assist codefendant Rabah El Haddad if he was not part of the conspiracy?

Thus, the use of the expert both rebuts the Government's principal theory and establishes a defense.

Additionally, the jury will need the knowledge of Dr. Phares to truly comprehend the strength of the demands of assisting another from ones homeland. This cultural trait is not understood by the layman or juror. The trait is built upon thousands of years of tribal culture, middle east commerce and the muslim religion. Dr. Phares will richly layer his testimony with classic Arabic literature, religious texts and personal study in the exact villages involved.

Nor does Dr. Phares suffer from the lack of expertise expressed in the Government's case of <u>Rubio-Villareal</u> supra. The Government's motion cites this case as authority to exclude Dr. Phares. However, the witness in that case had no formal training in his field and claimed to be only a self professed recovering alcoholic. Dr. Phares is clearly a giant in his field, a PhD, an author of several books, numerous articles, a professor in the exact field of is expertise and a witness who has been called upon by the United States Congress.

Accordingly, the motion by the Government is woefully insufficient to eliminate the Defendant's principal defense, which

would be a denial of Defendant's Sixth Amendment right as recognized by <u>Washington v. Texas</u>. 338 U.S. 14,18-19 (1967).

Respectfully Submitted,

Richard A. Hamar
Florida Bar # 127562
2437 Briarcrest Road
Beverly Hills, CA 90210
(310) 550-0460
(310) 550-0461
Attorney for Samhan

5

## PROOF OF SERVICE

I, Richard A. Hamar, declare:  I am a citizen of the United States; I am over the age of eighteen years and not a party to this action; my business address is 2437 Briarcrest Road, Beverly Hills, CA 90210.

On February 4, 2002, I hand delivered Defendant's Response to Government's Motion to Exclude Expert testimony to Tom O'Malley, Assistant United States Attorney, located at 500 E. Broward Blvd. 7th floor, Fort Lauderdale, Florida 33394.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This was executed at Los Angeles, California.

RICHARD A. HAMAR

6.

SERVICE LIST

Timothy Basiello, Esq.
33 N. Dearborn St. Ste 1015
Chicago, Illinois  60602
Fneiche

Glenn Seiden, Esq.
33 N. Dearborn Street, STe 1015
Chicago, Illinois 60602
Jaber

John R. Howes, Esq.
633 S.E. 3rd Ave., Ste 4F
Fort Lauderdale, FL 33301
El Haddad

Theodore Weeks, Esq.
1 Lake Morton Dr.
P.O. Box 3
Lakeland, FL 33802
Abdelmuti

Fred Haddad, Esq.
One Financial Plaza, Ste 2612
Fort Lauderdale, FL 33394
Naroq

Paul Goodman, Esq.
33 N. Deardon St., Ste 1015
Chicago, Illinois 60602
Aquil

Charles White, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6211-CR-HURLEY/VITUNAC(s)


UNITED STATES OF AMERICA,           )
                                    )
                                    )
v.                                  )
                                    )
                                    )
MOHAMMED SAMHAN,                    )
                                    )
                  Defendant.        )
_____ )


MOTION IN LIMINE TO EXCLUDE TESTIMONY OF CULTURAL EXPERT WITNESS

THE UNITED STATES OF AMERICA, through its undersigned counsel, hereby moves this

Honorable Court to exclude testimony from defendant Samhan's cultural expert witness, and in

support thereof states:

1. Defendant Samhan intends to call Dr. Walid Phares as an expert witness to testify about

the history, cultural and religious custom and requirement of assisting others.

2. This purported "expert" testimony should be excluded pursuant to *Fed.R. Evid.* 403.[1]

*See, United States v. Imran,* 964 F.2d 1313, 1316-17 (2nd Cir. 1992) (finding no abuse discretion

in trial court's exclusion of proffered expert testimony on Pakistani cultural custom that obligates

one to perform favor for stranger when asked to do so by friend); *United States v. De La Garza,* 462

---

[1] Rule 403 provides that the court may exclude otherwise relevant evidence if "its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, waste of time, or needless presentation
of cumulative evidence."

─ EXhιBιτ D ─

F.2d 304, 306-7 (D.C. 1972), (no abuse of discretion in trial court's exclusion of expert testimony concerning "Mexican revenge" and limiting such evidence to defendant's testimony because only defendant's understanding of custom relevant to intent in committing offense); *United States v. Sayakhom*, 186 F.3d 928, 936 (9th Cir. 1999) (no abuse of discretion in trial court's exclusion of cultural expert witness testimony concerning Laotian culture and general lack of education and sophistication by Laotians); *United States v. Sherpa*, 97 F.3d 1239, 1246, n.5 (9th Cir. 1996) (noting that trial court did not abuse discretion in excluding expert testimony of Nepali culture to corroborate defendant's testimony that small spoon was an ear cleaning device and not a narcotis spoon); *United States v. Ravel*, 930 F.2d 721, 725-26 (9th Cir. 1991) (no abuse of discretion in excluding expert testimony regarding status of goods as "stolen" under the UCC; "Expert testimony is inappropriate to bolster the credibility of a defendant."); *United States v. Ruelas-Altamirano*, 463 F.2d 1197, 11-98-99 (9th Cir. 1972) (no abuse of discretion in trial court's exclusion of cultural geographer's testimony that "Mexican people do not know the name of their employer and that favors are regularly given to and accepted by the Mexican Police from strangers."); *United States v. Rubio-Villareal*, 927 F.2d 1495, 1502 (9th Cir. 1991), *amended on other grounds by* 967 F.2d 294 (9th Cir. 1992) (no abuse of discretion in trial court's exclusion of expert testimony that defendant's failure to register truck is common phenomenon in Mexico); *Mull v. United States*, 402 F.2d 571, 574-75 (9th Cir. 1968) (no abuse of discretion in trial court's exclusion of cultural anthropologists testimony regarding Indian belief in witchcraft where defendant did not testify about witchcraft).

2

WHEREFORE, the United States respectfully requests that this Honorable Court exclude testimony from defendant Samhan's cultural expert witness.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____

THOMAS A. O'MALLEY
Assistant United States Attorney
Florida Bar No. 310964
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Tel: (954) 356-7254; Fax:(954) 356-7336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was hand-delivered this 5th day of February, 2002 to: Richard Hamar, Esquire, 2437 Briarcrest Road, Beverly Hills, CA 90210; Fred Haddad, One Financial Plaza, Suite 2612, Fort Lauderdale, FL 33394; Paul Goodman, 33 North Dearborn Street, Chicago, IL 60602; Timothy Biasiello, 33 North Dearborn Street, Chicago, IL 60602; John Howes, 633 S.E. 3rd Avenue, Fort Lauderdale, FL 33302; Charles White, 2900 Bridgeport Avenue, Suite 401, Coconut Grove, FL 33133.

_____

THOMAS A. O'MALLEY
Assistant United States Attorney

3